## Hoover v. Commonwealth.

(Decided October 14, 1921.)

### Appeal from Lee Circuit Court.

1.  Criminal Law—Conviction of Manslaughter Under Indictment for Murder—Evidence.—A verdict finding defendant guilty of manslaughter under an indictment for murder is not contrary to or unsupported by the evidence simply because defendant, who was the only witness to testify as to what happened at the time and just preceding the killing, by his testimony made out a clear case of self defense, where the evidence for the Commonwealth is inconsistent with and casts much doubt upon the truth of defendant's testimony.

2.  Criminal Law—Instructions—Prejudicial Error.—It was prejudicial error not to give a self defense instruction where a reasonable inference from defendant's evidence was that he believed and had reasonable grounds to believe at the time of the killing that he or members of his family were in imminent danger of death or great bodily harm at the hands of deceased whether the danger was real or only to him apparent.

3.  Criminal Law—Self Defense—Instructions.—An instruction which does not embrace the words "real or to him apparent" or other

words of like import in explanation of the danger that will authorize one to act in defense of himself and family is not sufficient as a self defense instruction.

4.  Criminal Law—Self Defense—Instructions.—Where from the evidence of defendant the killing resulted from his efforts to prevent a threatened forcible entrance of his home by deceased the jury should have been informed of defendant's right to protect his home from such an invasion, in connection with his right to defend himself and family from an impending danger of death or great bodily harm at the hands of deceased, under such circumstances either as a part of the self defense instruction or as a separate instruction, but the instruction given for this purpose and which was copied from one approved in another case where the facts were essentially different was improper here.

EZART ASHCRAFT and SAM HURST for appellant.

CHAS. I. DAWSON, Attorney General, and THOMAS B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

The appellant, James D. Hoover, at his home in Lee county, shot and killed Greely Addison on November 8, 1919.  He was indicted for murder and convicted of manslaughter, his punishment being fixed at confinement for twenty-one years in the penitentiary.

The first complaint upon this appeal is that the verdict is not supported by the evidence.  This contention is based upon the theory that defendant by his testimony made out a clear case of self defense, and that the jury could not disregard his evidence since he was the only witness who saw or attempted to state how the killing occurred or what happened at the time and immediately prior thereto.  But this argument is obviously unsound even if we could admit that defendant's evidence justified the homicide, since the Commonwealth proved previous threats, statements made by the defendant and his conduct immediately following the killing and that thereafter arming himself, he avoided arrest for several days by hiding in the mountains and away from his home, which with many other proven circumstances cast much doubt upon the truth of his testimony and which are quite inconsistent with innocence of wrongdoing.  We are therefore of the opinion that the evidence is quite sufficient to sustain the verdict and that there is no merit in appellant's first contention.

2.  Another contention made by appellant upon the appeal is that the court erred in failing to instruct the

jury upon the question of self defense. The attorney general in his brief for the Commonwealth admits that it is doubtful whether the court's action in this matter can be sustained but seeks to do so, first, by attempting to show that there was no evidence that defendant killed deceased in his necessary defense and second, that an instruction given by the court in lieu of the ordinary self defense instruction was sufficient under the evidence in this case. Defendant and deceased lived on the same creek about a mile apart. Defendant went to the home of deceased three times on the day of the killing, which did not occur until about midnight. On the first two visits, one in the morning and the other early in the afternoon, defendant carried a shot gun and, according to Mrs. Addison, simply asked for her husband, who was not at home, and stated that he had a sick child. Defendant says these two visits were made for the purpose of buying whiskey and that he purchased a quart from Mrs. Addison. The last visit was made about dark and deceased was then at home. Defendant was unarmed, ate supper and remained there until between nine and ten o'clock when he and the deceased left together; and the wife says her husband accompanied defendant upon invitation of the latter to "come and go with him, that he had a dram of whiskey he would give him down there on the creek." Defendant says deceased followed him home over his protest, cursing him and threatening him with violence if he did not go with him to drive off a neighbor. There is evidence that both, if not drunk, were at least somewhat under the influence of liquor. What happened after they reached defendant's home is thus related by him:

"Well he commenced using bad language and talking bad and my wife was sick and I ordered him out of the house, I told him my wife wasn't able to stand it and that he had to go, and he got out there and by that time the moon was getting kindly dim, showed a little, and he said 'let me come back in the house and get his carbide lamp,' and I said 'will you go on off if I'll let you do that,' and he said 'yes,' and he said he wanted a knife and some water and he comes in the house and got a chair and went out and sat down in front of the door and emptied the old carbide out of his light and got it lit, and then he come back in the house and when he come back he come the same way using bad language and cussing and I said 'I thought you were going to leave when you got your light

fixed' and he was telling me I had to leave all the time and I put him out again and he come right back in the house when I made him get out and he said 'you, by God, you have got to go' and I said 'No, I am not going' and he kept saying what he was going to do for my woman and that he could wait on her, said he had doctored cattle and all like that and he said he was here, and he got his fixing out and he told her what he was going to do and said then she could have it and my wife was in bed and bad off, and he taken himself out and said that when he had done so and so to the woman she could give birth to the child and I put him out of the house and told him to go and took him and put him clear out to the creek and told him if he come back I would kill him, and I come back to the house and he come back right after me telling me he aimed to stay and he said 'God damn you you have got to leave' and I begged him to be gone and told him to start and he throwed his hand back like that, like he had a pistol or a bottle or something and he said 'I am going to come back if I have to fill that house full of steel jackets,' and I jobbed my gun out that way and shot and he staggered backwards and fell and when he fell he asked me to forgive him, and I stepped over to him and forgave him, he said 'forgive me, Jim Dan' and he never spoke another word and I told him he was forgiven.''

It is urged by the attorney for the Commonwealth that this statement by the defendant himself of the facts and circumstances leading up to the killing does not contain the necessary elements of self defense, especially when considered in connection with the fact that it was shown without contradiction that deceased was unarmed at the time of the killing; that defendant was not in real danger and could not have believed that he was, if he thought deceased was only reaching for a ''bottle or something'' when he shot him; and that even if he believed deceased was reaching for a pistol the language used by deceased did not indicate a purpose of using it against defendant but upon the house merely; that the threatened danger if any was to the members of defendant's family who were in the house and not to him as he was on the outside.

This argument is adroit rather than convincing, since it is familiar law that one is authorized to act in self defense, or in defense of a member of his family, to avert an impending danger of death or great bodily harm whether such danger is ''real or to him apparent'' only, and the evidence here certainly is sufficient to require a

decision by the jury of whether or not under all the facts and circumstances, defendant was so acting when he shot and killed deceased. To deny such weight to defendant's own testimony is to deny the very purpose for which it was given and the only reasonable inference that can be drawn therefrom.

Unless, therefore, the instruction given in lieu of the ordinary self defense instruction contains every essential of such an instruction, the whole law was not given to the jury and prejudicial error was committed.

The instruction to which defendant objects and which counsel for plaintiff insists was sufficient when considered as a self defense instruction, reads:

"If the jury believe from the evidence that the deceased, Greeley Addison, after entering defendant's house in the presence and hearing of his family used obscene language or assaulted any members of his family, defendant had the right to command him to leave the house, and if he refused to do so, to eject him therefrom by the use of such force as was necessary, or appeared to defendant reasonably necessary to that end. And if the jury believe from the evidence that defendant to protect his family from such obscene language, or from such assault, if any or either, ordered deceased to leave the house, and the latter failed or refused to leave and defendant then believed and had reasonable grounds to believe from the conduct of the deceased and all the circumstances that he or any member of his family was then in danger of death or great bodily harm at the hands of the deceased, he had the right to use such force as was necessary or reasonably appeared to him to be necessary for his or their protection, even to the shooting of the deceased, and if he so shot and killed the deceased, the jury should acquit him."

This instruction is almost a literal copy of one that this court prepared and directed to be given on a new trial in Watson v. Commonwealth, 132 Ky. 46, 116 S. W. 287, not, however, in lieu of the ordinary self defense instruction, but in addition thereto, which fact alone would seem sufficient answer to the contention it covers the question of self defense. That it was not so intended in the Watson case is obvious and that it is not sufficient for that purpose here is at once apparent, since it omits entirely the words "real or to him apparent" and the idea thereby conveyed with reference to the impending dan-

ger, which omission this court has frequently held to be prejudicial error.  See Hobson's Instructions, section 758, and cases there cited, especially Martin v. Commonwealth, 25 R. 1928; 78 S. W. 1104.

Not only so, but this instruction was prepared to fit the facts of the Watson case which are not analagous to the facts of this case.  There the deceased was in the house and actually assaulting members of the defendant's family, while here deceased was not so engaged but had been ejected from the house and was attempting to return.

Since it is the duty of the court to instruct upon the whole law applicable to the case, the jury upon the evidence here should have been informed of defendant's right to prevent deceased from forcibly re-entering his house, but as in doing this alone and by itself defendant would not have been justified in killing deceased, it doubtless would be more appropriate to incorporate such information in the self defense instruction rather than to give it as a separate instruction although it can be done either way.

As the other matters complained of are not apt to occur upon another trial we do not pass upon them.

For the reasons indicated the judgment is reversed and the cause remanded for a new trial consistent herewith.