## Kindrick v. Commonwealth.

(Decided November 2, 1928.)

### Appeal from Wayne Circuit Court.

1. Criminal Law.—Evidence held sufficient to show that decedent's statement as to what took place at time of shooting was made in extremis, to his knowledge, and was therefore admissible as dying declaration.

2. Homicide.—Evidence held to warrant finding that defendant used more force in taking life of deceased by shooting him with a pistol than was necessary to protect himself under his right of self-defense.

3. Criminal Law.—All instructions, both in criminal and civil cases, are based on some evidence in the record as a foundation.

4. Homicide.—Self-defense instruction held not erroneous, because of failure to submit defendant's right to shoot or kill deceased in defense of his brother, and in only excusing him for so doing in defense of himself, where evidence showed that at time of shooting defendant's brother was in neither actual nor threatened danger.

5. Criminal Law.—Though defendant in felony case has right to be present at every step during progress of his trial, including submission of case to jury, he may voluntarily waive that right in any permissible manner, such as by voluntarily absenting himself from courthouse, where he is at liberty on bail.

W. N. FLIPPIN and BERTRAM & BERTRAM for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Frank Kindrick, and his brother, Roe Kindrick, were jointly indicted by the grand jury of Wayne county for the murder of Grover Dodson, and

upon their joint trial in the same court appellant was convicted of voluntary manslaughter and sentenced to imprisonment in the state penitentiary for a period of 17 years, but his brother and codefendant was acquitted, under a peremptory instruction from the court directing such verdict. Appellant's motion for a new trial was overruled, followed by this appeal. His counsel in their brief argue a number of alleged errors of the court as grounds for a reversal of the judgment, but many of them are wholly without merit, and for that reason will not be referred to or discussed in this opinion.

Before taking up any of the relied-on errors that we think merit consideration, a statement of the substantial facts proven on the trial should be made. The shooting that resulted in the death of the deceased occurred in the road, a short distance from Dry Fork schoolhouse, in Wayne county, at about 10 o'clock p. m. on December 17, 1927. There had been an entertainment at the schoolhouse that night, and appellant was the doorkeeper and took up tickets and collected admittance charges from the attendants. The teacher of the school was, of course, present, as was also the deceased and appellant's brother and codefendant in the indictment. After the entertainment was over and the schoolhouse locked, the teacher, appellant, his brother, and some others started on the road to go to their respective homes, and after going a short distance the teacher discovered that he had left his overcoat in the schoolhouse; whereupon he and appellant returned to it to get the overcoat, and at or near the cistern in the schoolhouse yard was the deceased, apparently engaged in an effort to procure a drink of water. He went into the schoolhouse with appellant and the teacher, and nothing of an angry nature occurred during the short time spent therein in obtaining the overcoat. After leaving the schoolhouse, the three started down the road, and and soon overtook the other members of the crowd, among whom was a boy by the name of Carlis Branscomb. Almost immediately upon the overtaking of the crowd by the three returning from the schoolhouse Branscomb said to deceased, "I thought you had a girl." Whereupon deceased, with an oath, stated that she had run off and left him, and directly thereafter deceased "circled around in front of Frank (appellant) and said, if he (deceased) knew he (appellant) was the cause, he would kill him," and deceased then struck appellant with his fist. Roe Kendrick, who was a short distance ahead,

ran back and struck deceased, when the latter knocked him down with his fist. By that time appellant had gotten up, and his brother immediately arose, and about that time deceased started towards appellant, who drew his pistol and fired a number of shots, some of which struck deceased in his side, and at least one penetrated his back, after his turning from the effects of the first shot, which entered the body of the deceased in front, and after the last shot was fired deceased ran down the road, with appellant and his brother after him. They did not overtake him, but he was later found lying, in or near the road, mortally wounded, and he died from the effects of his wounds about 40 hours thereafter.

It was shown that appellant and deceased were, to some extent, at least, rivals for the affections of a young lady in the neighborhood, and she was at the entertainment at the schoolhouse with deceased, but from some cause he did not accompany her home, nor does it appear that he brought her to the entertainment. It is proven that appellant stated, in substance, that if any young man accompanied that young lady home it would be himself. It was shown by every one that deceased had no weapon of any character, but it was also proven and admitted by appellant that he went to the entertainment armed with his pistol, and which he had to some extent overhauled on the afternoon preceding the entertainment. He explains being armed by saying that he anticipated possible trouble as doorkeeper and collector of entrance fees, and for that reason he carried along his pistol. At the time of the first shot, and as long as they continued thereafter, so far as the records shows, appellant's brother was standing to the right of deceased and to the left of appellant, and at about right angles to both of them. It is not claimed that the deceased made any effort to assault or in any manner to harm Roe Kindrick after the first encounter, in which the latter was knocked down by deceased with his fist, nor was Roe Kindrick at that time making any such effort towards deceased. In other words, at the time of the beginning of and throughout the shooting, neither deceased nor Roe Kindrick was making any demonstration towards harming one another; but according to the testimony of defendant and his witnesses deceased was at that time going towards appellant, but without any weapon. As we have intimated, after the first shot deceased began to turn, and

thereafter received shots in his side, and at least one in his back, the latter of which was necessarily fatal.

The shooting occurred on Saturday night, and the dying declaration complained of was first made on Sunday morning and repeated on Monday, the next day; the deceased dying that night. It was reduced to writing and signed by deceased, and it is in these words:

"December 18, 1927. I, Grover Dodson, was at Dry Fork schoolhouse Saturday night Dec. 17, 1927, and I occupied Hettie Baker company and she tells me Frank Kindrick had a date with her and after the party was over Frank Kindrick said to Grover, 'You are trying to beat my time aren't you.' I told him he had a girl didn't he and Frank said, 'By God I am going to take her home if any body does.' I, Grover, told him I would see about it. Frank Kindrick said, 'You son of a bitch what made you do me that way,' then Grover hit him with my fist and knocked him nearly down and about this time some one shot me in the back. Roe Kindrick and his wife and Mac Roberts had just went out the road a little ways [and I believe to the best of my knowledge it was Roe Kindrick shot me.]"

The court excluded from the hearing of the jury so much thereof in brackets as said, "and I believe to the best of my knowledge it was Roe Kindrick shot me." It will be perceived that practically the only difference between the testimony of defendant and his witnesses, as to how the difficulty occurred, and that stated in the dying declaration, is that in the latter some brief conversation is given between appellant and deceased before the shooting, which clearly referred to their rivalry for the affections of the young lady, and that appellant applied to deceased a vile epithet before the latter struck him with his fist. There are other proven statements in the case, which, if true, clearly show animus on the part of appellant against deceased, and which was no doubt generated because of the rivalry above referred to.

It is first insisted that the deceased's declaration should have been excluded, because it was not shown to have been made in extremis; but counsel is clearly in error in so contending. It was indisputably shown that deceased said, in substance, from the time he was taken

to the residence of a kinsman, shortly after the shooting, that he was "done for," and that there was no chance for his recovery. He even advised that it would be useless to send for a physician, and urged that he not be taken to a hospital over the mountain roads, because he could not live until he got there. We will not insert in hac verba the testimony on that point, but content ourselves by saying that it abundantly proved such impending dissolution of the deceased, with his knowledge, as to permit the introduction of his dying declaration.

Upon the testimony, as we have so briefly, but substantially, outlined, it is seriously contended, not only that the verdict is flagrantly against the evidence, but that appellant's motion for a peremptory instruction of acquittal should have been sustained, and cases from this court are cited wherein such a motion was approved under the facts appearing in those records. But, surely counsel, in making that contention in this case, are influenced more by their zeal for their client's cause than by the pronouncements of this court in the cases to which they refer, and upon which they rely. If there had been no conflicting testimony whatever as to how the difficulty resulting in the homicide was brought on, and if the record was barren of any testimony and remarks and conduct by appellant displaying jealousy and hostility towards the deceased, then the jury under the instructions of the court had the right to find from the evidence that appellant used more force in taking the life of the deceased than was necessary to protect himself under his right of self-defense, and which finding we think is fully justified from the evidence. Even if it had been necessary under the law governing that right to fire the first shot, it was unnecessary to continue shooting deceased when he had shown a disposition to abandon the difficulty by turning away from appellant. But, be that as it may, we are thoroughly convinced that the contention now under consideration cannot be sustained.

Some feeble criticism (but not apparently serious) is made of the instructions of the court wherein it submitted to the jury the murder charge and the lower crime of voluntary manslaughter, but we find no meritorious foundation in support thereof. Those instructions substantially followed the approved practice, and nothing contained therein could possibly have misled the jury to

appellant's prejudice. But it is seriously contended that the self-defense instruction was and is erroneous because it did not submit appellant's right to shoot or kill deceased in defense of his brother, Roe Kindrick, but only excused him for so doing in defense of himself; and in support of this contention a number of cases from this court are cited, wherein, under the facts contained in them, it was held error for the instruction to not submit defendant's right to commit the homicide in defense of another, as well as in defense of himself. In making this contention, counsel seem to overlook the fact that all instructions, both in criminal and civil cases, are based upon some evidence in the record as a foundation for them. Barnes v. Commonwealth, 179 Ky. 725, 201 S. W. 318; Grau v. Commonwealth, 185 Ky. 111, 214 S. W. 916.

In the cases relied on by counsel, there was substantial evidence that the third person was in danger of death or great bodily harm at the hands of the deceased, and which gave the defendant the right to take such action as the third person might take under the circumstances, and in doing so he would be excused from the consequences of his act on the ground of defense of another. In this case, as we have seen, Roe Kindrick at the time of the shooting was in neither actual nor threatened danger at the hands of the deceased. The latter was not even advancing towards him, but rather going from him, and appellant, in giving his testimony, did not pretend to justify his shooting of the deceased, *except* in defense of himself. The record being in the condition indicated, the court did not err in failing to include in its self-defense instruction defendant's right to commit the homicide in defense of his brother.

Lastly, it is contended that the judgment should be reversed because, as insisted, the case was submitted to the jury and it retired to its room for deliberation in the absence of appellant. Whether that fact be true or not we are unable to tell from the record. Affidavits of defendant and of others stating that such was the fact were filed in support of the motion for a new trial. The orders of the court recite that when the cause was submitted the defendant was present and the jury was polled, and the same facts appear from the orders of the court at the time the verdict was returned. However, the bill of exceptions recites that appellant was not present when the

case was submitted and the jury retired to its room for deliberation. But immediately following the signature of the judge to the bill of exceptions containing such recital the latter appended this signed statement:

> "The court by way of explanation states that to the best of his recollection defendant herein was in court and present when the case was submitted to the jury, and he believes that defendant was in fact, present."

In this condition of the record, it is difficult to determine what are the facts with reference to this ground; but we will not stop to determine whether the orders of the court or the bill of exceptions should prevail on this point, since for other reasons, hereinafter discussed, the contention is unavailable to appellant.

It appears from the record, without contradiction, that the case was argued for two hours on a side, and the argument was finished one night at 10:30 o'clock. The court then adjourned until 9 o'clock the following morning, without submitting the cause. During the trial the defendant was permitted to remain on bail, which gave him the liberty to be at large. He was present on the night when the argument was finished, and when the order of adjournment until 9 o'clock the next morning was made. He states in his affidavit that, notwithstanding he necessarily had such information, he did not return to the courthouse the next morning until 9:30 o'clock, and at that time the case had been submitted and the jury was in its room considering the case. It will not be disputed but that defendant has the undisputed right to be present throughout the trial, nor can there be any doubt but that the submission of his case to the jury is a part of his trial, and that he has the right to be present at that time.

On October 26, 1928, we delivered our opinion in the case of John Boreing v. H. M. Beard et al., and which is reported in 10 S. W. (2d), and in that opinion the question here under consideration was most thoroughly considered, and both foreign and domestic cases bearing upon it are cited and discussed. The conclusion therein reached was that, notwithstanding defendant upon his trial under a felony charge has the right to be present at the taking of every step during the progress

of his trial, yet he may voluntarily waive that right in any permissible manner that he may see proper to employ, one of which is voluntarily absenting himself from the courthouse. We do not deem it necessary to refer to the authorities cited in that opinion, nor to again discuss the question in this one, except that in addition to the cases found in that opinion we may refer to the text in 16 C. J. 817, sec. 2071, and to the case of Smith v. Commonwealth, 12 Ky. Op. 682, 6 Ky. Law Rep. 305. It is stated in the text of the volume of Corpus Juris just referred to that some courts hold that the right of defendant to be present at each step taken by the court during the progress of his trial may not be waived by him, and especially so when he is being tried for a capital offense. But it is likewise shown that a majority of the courts hold otherwise, and in the Boreing case we adopted the majority rule.

In the Smith case the exact point under discussion was involved. The defendant had voluntarily absented himself from the courthouse and was not present when his case was submitted to the jury, but this court, through Judge Lewis, said:

"His voluntary absence at that time is now made one of the grounds for a reversal of the judgment. Even if the court had, under the Criminal Code, power to revise the alleged error of the court below (the law at that time being that the Court of Appeals could not review an order overruling a motion for a new trial in a criminal cause), the voluntary absence of appellant in defiance of law, and of the authority of court at that time would afford no ground for reversal."

There can be no distinction between the effect of such a voluntary absence because of a permanent absconding of defendant from the jurisdiction of the court, and his voluntary temporary absence from the courthouse, and if he has no legal excuse for being absent he will be deemed to have waived his right to be present, and cannot thereafter insist upon the error as ground for reversing the verdict finding him guilty.

We therefore find no error in the record prejudicial to appellant's substantial rights, and the judgment is accordingly affirmed.