## Caudill v. Commonwealth.

(Decided March 22, 1929.)

CAUDILL & TACKETT for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Logan—Affirming.

The appellant, with his son Charlie Caudill, was indicted for the crime of murder by the grand jury of Floyd county. They were tried jointly in 1926, and were convicted of manslaughter, but, upon appeal to this court, the judgment was reversed. 220 Ky. 191, 294 S. W. 1042. The reason for the reversal on the first appeal was because of the admission of incompetent evidence. At the second trial in 1928 the appellant was tried separately, and the jury again found him guilty of manslaughter and fixed his punishment at eight years' confinement in the penitentiary. He has again appealed, urging several grounds for reversal.

His first ground is that the court admitted incompetent testimony to his prejudice over his objection. His ground is not well established, as the evidence which was admitted appears to be within the rules which allow such evidence to go to the jury; but there was evidence relating to voices heard in the dark at the time of the killing which was probably incompetent, but there was no objection to that particular evidence. His most serious complaint about the evidence is the admission of a written dying declaration. The trial court, after carefully considering the question, allowed this declaration to be read to the jury; but upon a more thorough consideration of the question he reached the conclusion that it was incompetent, and he thereafter admonished the jury not to consider the evidence for any purpose. It is argued by counsel for appellant that this evidence was not only admitted, but it was left with the jury for a day or two before it was withdrawn. We have examined the admonition of the trial judge at the time he withdrew this evidence from the consideration of the jury, and it was full, positive, clear, and not susceptible of misunderstanding for any reason. He told the jury what was necessary to render such evidence competent and pointed out wherein the commonwealth had failed to show such facts as would render the evidence admissible. He concluded by telling the jury that the members should not consider the evidence for any purpose. We must decide this point against the appellant, as we are not convinced that his rights were prejudiced in any way by allowing the written statement of the decedent to be read in the presence of the jury.

The second ground relied on for a reversal is that the court should have instructed the jury to return a verdict for the appellant at the conclusion of the testimony offered by the commonwealth. Another ground is that the verdict is flagrantly against the weight of the evidence, and we will dispose of these two grounds together.

Appellant killed John Henry, who had married his daughter. Ira Stevens had married another daughter. Stevens lived at Weeksbury, Henry lived at Wheelwright, and appellant lived at Burton. These places are in the same neighborhood. On September 16, 1925, Henry and his wife and Stevens and his wife spent the day together visiting each other and driving about the community in their automobiles. One Perry was a guest and was generally present during the whole of the day. Large quantities of moonshine whisky were consumed by the men, and they became intoxicated before nightfall. They reached a point near Wheelwright opposite the mouth of Otter creek about 8 o'clock at night. Probably the two automobiles met there and stopped for some purpose. It is certain that Stevens in his drunken condition, abused his wife, as many of the neighbors testified that they heard a woman crying, and there was evidence to the effect that Stevens compelled his wife to get out of the automobile. William Caudill, a son of appellant, learned of the things that were going on, and he procured a gun and went to the scene of the trouble. He did nothing, but being alarmed by the condition of affairs, he hastened away to find his father and brother so that he might notify them of the abuse which had been heaped upon his sister by her husband. The appellant, at the time being a deputy constable, was engaged in watching a certain place for the appearance of a bootlegger, and with him was Willie Johnson, a deputy sheriff. His son Charlie was also present. William called to his father, and his father, in company with Willie Johnson and Charlie, hastened to the place where the automobiles were standing. From the time they approached the automobiles until John Henry was killed, the evidence falls into confusion. It is clear that Ira Stevens had driven away immediately before the appearance of appellant. John Henry was still on hand with a cue stick in his hand which he had been carrying during the day. It is testified to by several witnesses that some one called to appellant when he was a short distance away from the scene and advised him that Stevens was coming, and that

Henry was about to go. In response to this appellant said: "Hold him until I get there." This is denied by appellant and his witnesses. When appellant approached he had his pistol in his hand. Perry, a witness for the commonwealth, testified that he came immediately up to Henry, and that Henry made some effort to strike him with the cue stick. There was a scuffle in which appellant, Perry, Charlie, and Henry all took part; but appellant, according to Perry, struck Henry with the butt of his pistol, knocked him down, and then shot him. He lived until the following night. Only one shot was fired. On the other hand, appellant testified that when he came up he asked Henry to take him in his automobile to Weeksbury so that he could arrest Stevens for what he had done to his wife. In response to this request he says that Henry cursed him viciously and attacked him with a cue stick, knocking him down, and that while he was lying on the ground Henry was standing over him with a pistol in his hand and with the cue stick raised at the time he shot him. Appellant claims that when Henry struck him with the cue stick he (appellant) dropped his pistol, and that Henry grabbed it, but he had another pistol on him, and it was the other pistol which he drew when he fired the shot that killed Henry. Appellant is fully corroborated by Johnson and by his son Charlie. He is also corroborated in part by a young lady who was passing, and who testified that the light from the automobile revealed a man lying on the ground and another man standing over him with upraised hand, and that she saw the pistol fired from the ground. It is thus seen that the preponderance of the evidence was with appellant, but Perry testified to facts that were sufficient to take the case to the jury and to uphold the verdict, when considered in the light of all the circumstances and the facts disclosed by other testimony. It is shown that Stevens procured a pistol a short while before and brought it upon the scene, when Henry took the pistol away from him, broke it to pieces on a rock in the road, and threw the pieces away. There had never been any ill feeling between Henry and appellant.

This court is not the tribunal to pass upon the credibility of witnesses. Under our system of jurisprudence, the jury alone must determine whether they will believe one witness against others, or one set of witnesses in preference to another set of witnesses. We cannot re-

verse the verdict of the jury in a criminal case unless its finding is flagrantly against the weight of the evidence, and it must be so much so that the first impression created on the court is that the verdict could not have been rendered other than as a result of passion or prejudice. Cooley v. Commonwealth, 185 Ky. 142, 214 S. W. 898; Branham v. Commonwealth, 223 Ky. 233, 3 S. W. (2d) 629; Picklesimer v. Commonwealth, 224 Ky. 381, 6 S. W. (2d) 457.

Another ground relied on by appellant is that the court, in the instructions given, did not justify appellant in shooting Henry if he fired the shot in defense of his son Charlie. He relies on the cases of Hoover v. Commonwealth 192 Ky. 490, 233 S. W. 1042; Gatliff v. Commonwealth, 107 S. W. 739, 32 Ky. Law Rep. 1063; Elliott v. Commonwealth, 152 Ky. 791, 154 S. W. 25; Leadingham v. Commonwealth, 180 Ky. 38, 201 S. W. 500. The principles announced in these cases are entirely sound, but counsel for appellant overlooks one important fact in the discussion of this point. While appellant was testifying he stated that he fired the shot that killed Henry solely for the reason that he believed at the time that Henry would do him great bodily injury or take his life if he did not thus defend himself. His own testimony shows that he was not attempting to defend his son, and his son testified that he was not doing anything, and there is nothing to show that his son was in danger. The facts placed this case under the rules announced in Kindricks v. Commonwealth, 226 Ky. 144, 10 S. W. (2d) 639. We cannot sustain the contention that the appellant was entitled to such an instruction.

We have thus disposed of all of the grounds relied on by appellant for reversal and find the court in disagreement with him in his contentions.

Judgment affirmed.