## Vick v. Commonwealth.

(Decided December 9, 1930.)

HUBERT MEREDITH for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Tom Vick appeals from a judgment convicting him of murder and fixing his punishment at life imprisonment.

Appellant did not testify, and the facts developed by the witnesses for the commonwealth are these: Appel-

lant was a fisherman and lived on a houseboat, which was tied to the bank of Green river on the Ohio county side. About 7:30 p. m. on Sunday, April 20, 1930, Ross Vincent and the deceased, Bill Wheeldon, went to the houseboat. In a short time they were joined by appellant. Later on several others appeared, and the crowd engaged in a game of stud poker. Wheeldon brought with him a half pint of whisky, and some time during the evening went across the river with another member of the party and returned with more whisky, which he and appellant seem to have drunk. In the course of the evening he and appellant called each other names, and, while this seems to have been done in a playful manner, there was some resentment on the part of appellant. By 12:30 a. m. all those present had left, with the exception of appellant, Wheeldon, and Ross Vincent. Some time later appellant pulled a $20 bill out of his pocket, and wanted Wheeldon to play cards with him. Wheeldon replied that he did not want to play as he did not have enough money to play with. At that time Wheeldon had only two $1 bills and some silver. Appellant then told Wheeldon that he was not a sport. Wheeldon said that he would go over to South Carrollton and get a $20 bill if appellant would play with him. Appellant did not say whether he would or not. About that time Wheeldon and Vincent started to leave. Wheeldon said, "Goodbye, Tom." Appellant said, "God damn you." Wheeldon opened the door and asked appellant what was the matter with him. Appellant, who was in the boat by the bed, fired the first shot. Vincent stepped off the porch into a dinky boat and asked appellant if he had killed Bill. Appellant said he did not know, and then fired the second shot. After the second shot was fired, Vincent crossed over into the Black Cat yacht until appellant brought Bill out and threw him off the platform. When the shots were fired, Wheeldon was not doing anything to appellant, or attempting to hurt him in any way, and, so far as Vincent knew, had no gun to hurt him with. When appellant threw Wheeldon off the platform, he said, "I guess that will do you." When Wheeldon's body was taken from the river, it was found that he had been shot in the jaw and the hip, and that his throat had been cut in two places. When the officers arrived at the boat, they found appellant lying on a cot in a drunken stupor, his hands and clothing were bloody, and nearby were two shotguns and an automatic pistol.

A few feet away was a pool of blood and some broken bottles.

It is first insisted that the court erred in refusing a continuance. In support of the motion for a continuance, appellant filed his own affidavit and that of his attorney.

Briefly stated, the facts contained in appellant's affidavit are these: The homicide occurred April 21, 1930, the first day of the April term of the Muhlenberg circuit court. Appellant was arrested on that day and placed in jail, and had been in jail ever since that time. He employed Hon. Hubert Meredith, and it was not until the middle of the second week of the term that a note was drawn up and satisfactory arrangements made in regard to the fee. Since such arrangements had been made, his attorney has been busy trying jury cases nearly every day and has not had time to prepare his case. When he first talked with his attorney he was advised that it had not been customary to try cases at the indictment term, and he did not know any better until he was brought out of jail and his case set for trial, which was about two weeks ago. He had done everything in his power to get ready, but had been able to talk with his attorney only once or twice, and then very casually, except on the afternoon of the day before, when he had rather a lengthy conversation with his attorney. He had not had an opportunity to talk with all the witnesses in the case, and, after the commonwealth announced ready for trial, he was given quite a while to talk to the witnesses, but had not talked to two of them when the court sent for him. The affidavit also contains references to two or three possible witnesses, but does not state what they would testify to.

The facts stated in the attorney's affidavit are these: Although appellant had sent for him shortly after he was placed in jail and began an effort to perfect arrangements to pay him his fee, the arrangement was not completed until during the second week of the term. Since that time he had been steadily and almost constantly engaged in court, having tried jury cases during many of the days intervening, and had no reasonable opportunity to prepare the case for trial. Because of his pressing engagements in court, he had not had a reasonable opportunity to talk with the defendant, or to go fully into the matter with the view to procure the attendance of neces-

sary witnesses. On that day he had learned facts and circumstances touching the character of the decedent and his past dealings with the defendant that would necessitate an investigation, with a view of finding witnesses by whom to prove the character and disposition of the decedent and former dealings between him and the defendant, all of which would have a considerable bearing on the outcome of the trial. He had been practicing law in the court for nearly twenty-five years, and it had never been the custom to require a defendant in an important case to try his case at the term in which the indictment was returned. Because of this custom, he advised the defendant prior to the time the indictment was returned that there would be no trial of the case at that term. Since the case had been set down, he had done everything he could in order to get it ready, but, by reason of the press of other engagements, he had not had an opportunity to prepare the case for trial, and the case could not be tried at that term in justice to the defendant.

Appellant insists that on the above showing he was entitled to a continuance on the authority of the cases of Allen v. Commonwealth, 168 Ky. 325, 182 S. W. 176; Penman v. Commonwealth, 141 Ky. 660, 133 S. W. 540, and Samuels v. Commonwealth, 154 Ky. 758, 159 S. W. 575. In the Allen case the affidavit of the accused discloses the following facts: He was indicted on Monday, the seventh day after the comission of the crime. His trial was set for the following Thursday. During such time he had been lodged in jail without opportunity to see and consult with his counsel or his witnesses, or to discover all of his witnesses, or what he might prove by them. He had been advised that it was unsafe for him to leave jail, and had been unable to prepare his case for trial. In view of these facts, the court held that the refusal of a continuance was an abuse of discretion. In the Samuels case it was held an abuse of discretion requiring a reversal of the conviction for a court to deny an application for continuance made by one who was indicted for murder committed the day before the indictment was found and to compel him to go to trial five days thereafter; it appearing from his application that he might have obtained material witnesses in his behalf, and that his attorneys, who were appointed by the court to defend him, had no opportunity, owing to other court work, to consult with him or to prepare for his defense.

In the Penman case the facts were these: Accused was arrested for rape on September 3d, was notified on September 15th, while in jail, that a special term to consider his case would be convened on the 28th. The grand jury convened and returned on that date an indictment against the accused, who was placed on trial two days later. He sought a continuance on the ground that he had had no opportunity to confer with his counsel, and that counsel had not had an opportunity to prepare his case, but there was nothing to show that he was not as well prepared for trial then as he would be at a subsequent term, nor anything to show that he could procure evidence in his behalf if a continuance was granted, either to impeach the testimony of witnesses for the state, or to corroborate his own testimony that he was innocent. Though recognizing the rule that every person accused of crime, however guilty he may be, or whatever the nature of the crime charged against him, is entitled to a fair opportunity to prepare and present his defense, it was held that the denial of the application for a continuance was not error.

In the case under consideration, the crime was committed about 2 o'clock on the morning of April 21st, which was the first day of the April term of the Muhlenberg circuit court. The indictment was returned on April 26th. Appellant was brought into court and his case set for trial on May 12, 1930, or sixteen days later. Whatever had been the custom of the court, appellant was fully apprised more than two weeks in advance of the fact that his trial would take place during the indictment term. Appellant employed counsel as soon as he could get in communication with him, though final arrangements to secure the fee were not made until the middle of the second week of the term, or twelve or thirteen days before the trial. The affidavits did not show that counsel was engaged in the trial of cases every day during the term, but only that he had been so engaged "almost constantly," or "nearly every day." The affidavits further disclose that appellant had talked with counsel once or twice some time before the trial, and had had a lengthy conversation with him on the afternoon preceding the trial. It further appears that on the day of the trial he was given an opportunity to talk with the witnesses. Twice it is claimed that he did not have a chance to talk to two of them, but whether they were material witnesses or not does not appear. As a matter of fact, every one

who knew anything about the case was present. What took place before 12:30 o'clock was of very little moment. The whole case turns on the situation at the time of the homicide. At that time only the deceased, appellant, and Vincent were present. There was no showing in the affidavit of a reasonable probability that, if more time were given, there could be found witnesses who would impeach Vincent, whose story was fully corroborated by undeniable facts. In the motion for a new trial there was no claim or showing of newly discovered evidence that might reasonably affect the result in case of another trial. In the circumstances we are constrained to hold that the trial court did not abuse a sound discretion in overruling the motion for a continuance.

In addition to instructions on murder, manslaughter, and self-defense, the court told the jury that voluntary drunkenness was no excuse for crime, but that the evidence of defendant's drunkenness at the time of the commission of the offense should be considered by them on the questions of motive and malice. It is claimed that, inasmuch as there was no plea of insanity, the instruction on drunkenness should not have been given. It must not be overlooked that under a plea of not guilty the accused may avail himself of any defense which the evidence tends to establish, and it is the duty of the trial court to instruct on such defense whether it be supported by evidence presented by the accused, or introduced on behalf of the commonwealth. Whether, under the facts disclosed by the evidence, the instruction on drunkenness was proper, we need not stop to determine. Even if improper, it was altogether favorable to appellant, in that it gave him the benefit of the only extenuating circumstance disclosed by the evidence, and therefore was not prejudicial. As a matter of fact, there was no plea and no evidence tending to show that appellant acted in self-defense, and, were we to order a reversal because of the instruction complained of, it might be claimed with equal propriety that the case should be reversed because the instruction on self-defense was given.

Lastly it is insisted that appellant's motion for a peremptory should have been sustained on the ground that the indictment charged that the offense was committed in Muhlenberg county, whereas the proof showed that it took place in Ohio county. The basis of this contention is that the evidence discloses that Green river

separates Muhlenberg county from Ohio county, and that the offense occurred beyond the center of the stream, and near the shore on the Ohio county side.

Section 20, Criminal Code of Practice, provides:

"If a river be the boundary between two counties, the criminal jurisdiction of each county shall embrace offenses committed on the river, or on any island thereof."

Section 1143, Kentucky Statutes, is as follows:

"In all cases where any part of a river, water, watercourse, highway, road or street, shall be the boundary line between two counties, the courts and judges and justices, and all circuit and county officers of both such counties, shall have concurrent jurisdiction in all cases over the whole extent of such parts of said river, water, water-course, highway, road or street."

But the point is made that section 1143, supra, was expressly repealed by section 4356s, Kentucky Statutes. Even if this were true, the question of jurisdiction would still be controlled by section 20, Criminal Code of Practice, which has not been repealed. As a matter of fact, however, section 1143, supra, though specifically mentioned in the repealing clause contained in section 4356s, supra, was not repealed. Section 4356s, supra, is section 89, chapter 80, Acts 1914. The title of that act is: "An act defining public roads; providing for their establishment, regulation, use and maintenance; and creating the office of County Road Engineer, and prescribing the duties thereof."

Section 1143, Kentucky Statutes, is section 16, article 2, "Jurisdiction of Courts," of chapter 182, Acts 1891-1893, the title of which is: "An act relating to crimes and punishments."

Thus it will be seen that not only was the act repealed not mentioned in the title of the repealing act, but that its subject-matter, which dealt solely with crimes and misdemeanors, and the jurisdiction of courts in such cases, was wholly foreign to the subject expressed in the title of the repealing act. That being true, the repealing act is invalid, in that it violates section 51 of the Constitution, providing that no laws shall relate to more than one subject, and that shall be expressed in the title.

Exall v. Holland, 166 Ky. 315, 179 S. W. 241; Houston v. Boltz, 169 Ky. 640, 185 S. W. 76. It follows that, for the purpose of jurisdiction, the crime was committed in Muhlenberg county, and that the motion for a peremptory instruction was properly overruled.

On the whole we find no error in the record prejudicial to the substantial rights of appellant.

Judgment affirmed.