## Pergram v. Commonwealth.

(Decided December 9, 1931.)

W. B. WHITE, C. W. GOODPASTER, J. A. RICHARDS, and G. C. EWING for appellant.

JAMES CLAY; J. W. CAMMACK, Attorney General; GEORGE H. MITCHELL, Assistant Attorney General; W. C. HAMILTON; and J. SIDNEY CAUDEL for appellee.

388

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing:

On a Sunday in April, 1930, at the railroad station of Olympia, Bath county, Curtis Crouch was shot and killed. He had gone there armed with two pistols. While he was sitting on a baggage truck, his cousin James Pergram, aged 71 years and weighing only about 130 pounds, came along. The afternoon train had just come in and there were a number of people at or near the station. Ill feeling had existed between the two men, and the first words spoken on this occasion were by Pergram, who asked the deceased, "What makes you ram your hands in your pocket every time I come around?" He told him that he had nothing against him and he need not be afraid. Crouch responded that he was not afraid of him either. Other words passed between the two men, although not understood by the witnesses, and Crouch was seen to draw a pistol and to catch hold of the old man, who grabbed that weapon and reached for his own. In the scuffle both fell to the ground with Crouch, who was a strong, robust man, weighing about 240 pounds and much younger, on top. They finally got up and then began shooting at each other. The evidence is conflicting as to who fired first, although some of the witnesses introduced by the commonwealth corroborate James Pergram that Crouch did so. During this encounter Bob Smith ran to the home of the appellant, Marshall Pergram, brother of James, who was nearly 70 years old and a little man, and who lived perhaps 150 yards away, and told him of the fight. Marshall secured his pistol and quickly went there.

Two women, who it would appear were not in position to view the whole scene or to know just what occurred, testified that both Marshall and "Jimmie" (as he is called) were standing together shooting at Crouch at the same time and while he lay prostrate on his back. But their evidence on this point is contradicted and was weakened by cross-examination. All of the other witnesses in the case, including those introduced by the commonwealth, make it clear that when Marshall arrived his brother and Crouch had ceased shooting at one another and "Jimmie" was walking away, staggering and bleeding from a wound extending through his body. All the witnesses say that as Marshall approached he and Crouch began shooting at each other. Some testify

that Crouch was sitting on the side of the railroad track and others that he was standing. There is a conflict in the evidence here also as to who fired first. Marshall had a hole shot through his hat but was not wounded. During the fight Crouch had a pistol in each hand, one a .45 and the other a .38 Special. An examination disclosed both had been fired. He was shot twice through the chest, either of which wounds would have caused his death. He was also struck in the right hip bone and through his arm and in his leg. Marshall testified that he shot once or possibly twice.

From a judgment of conviction and ten years in prison, Marshall Pergram appeals, and asks a reversal upon the grounds that the court erred to the prejudice of his substantial rights by omitting the word "present" from the manslaughter instruction relating to his having aided and abetted his brother in the killing of Crouch, and also by failing to give an instruction on malicious shooting and wounding with intent to kill, and on shooting and wounding in sudden heat and passion.

The facts of this case are strikingly like those presented in Lyons v. Commonwealth, 216 Ky. 202, 287 S. W. 534, 536, where two brothers were convicted of manslaughter. One of them, Charles Lyons, was engaged in a fight with Silas Heath. Doll Lyons came to his rescue and intervened or attacked Heath after Charles and he had ceased fighting, the evidence, as here, being conflicting on that point. But it appears reasonably clear that Doll's bullet struck Heath in the hand or wrist and did not contribute to his death, and that he had already received the mortal wounds at the hands of Charles. We may repeat as applicable to the case in hand what was there said:

"Obviously, if Doll did not fire or otherwise participate in the difficulty until after the difficulty between the other two had ceased, and they had separated and were no longer combatants, then Doll did not aid and abet the commission of a crime which had theretofore been committed by his brother. To constitute one an aider or abettor it is necessary that he should aid either at the time of or before the commission of the offense by the other, or been guilty of some overt act or some act of encouragement in such other. He cannot become an aider and abettor by in-

jecting himself into the situation after the crime has been committed by another and after the combat between the other two is at an end; and if he does so and is himself guilty of any infraction of the law thereafter, he is punishable for such infraction, but not because he has aided and abetted the other in the commission of a crime already committed.''

It is held that under the facts the court should have required the jury to believe, before it could find Doll guilty of being an aider and abettor, that he had fired the shots at a time when the difficulty between his brother and the decedent was in progress, and should have further instructed the jury that if Doll fired and wounded Heath only after the difficulty between the other two was over, from which wounding by Doll he did not die, they should not find him guilty of aiding and abetting in the homicide but might find him guilty of the felony of shooting at and wounding another with intent to kill, under the provisions of section 1166, Statutes, or for shooting and wounding another in sudden heat and passion without previous malice, which is only a misdemeanor. It was declared in that case, and has been reiterated, that the last two offenses may be included in a charge of murder and should be instructed upon when the evidence authorizes it. Noble v. Commonwealth, 217 Ky. 556, 290 S. W. 330; Gill v. Commonwealth, 235 Ky. 351, 31 S. W. (2d) 608.

The instructions in this case confined the jury to a consideration of the evidence as to whether Marshall Pergram shot and killed Crouch and as to whether James Pergram did so and Marshall aided and abetted him, one instruction relating to murder and another to voluntary manslaughter. The right of self-defense and defense of his brother was, of course, recognized and incorporated in the instructions.

The omission of the word ''present'' in the manslaughter instructions relating to the aiding and abetting by the defendant of his brother was no doubt an inadvertence and will be corrected upon another trial.

For the failure to give the instructions upon malicious shooting and wounding and shooting and wounding in sudden heat and passion, the judgment is reversed.