## Pergram v. Commonwealth.

(Decided February 19, 1932.)

466

W. B. WHITE, LESTER HOGGE, C. W. GOODPASTER, J. A. RICHARDS and G. C. EWING for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellant, James Pergram, and his brother, Marshall Pergram, were jointly indicted in the Bath circuit court for the murder of Curtis Crouch. Marshall Pergram was tried and convicted and on appeal to this court the judgment was reversed. Pergram v. Commonwealth, 241 Ky. 387, 44 S. W. (2d) 277. James Pergram filed a motion for a change of venue, which was sustained, and the case was transferred to Rowan county. On the trial there he was convicted of voluntary manslaughter and his punishment fixed at confinement in the state penitentiary for a period of two years and one day. On this appeal the only grounds relied upon for a reversal are alleged errors in the instructions.

It is insisted that the trial court erred (1) in failing to include in the instruction on self-defense the right of appellant to defend his brother: (2) by qualifying appellant's right of self-defense by giving an instruction on voluntary combat; (3) in instructing the jury that they could not acquit the defendant on the ground of self-defense if he brought on the difficulty. It is argued that there was evidence authorizing an instruction on appellant's right to defend his brother and that there was no evidence authorizing the qualification of his right of self-defense.

James Pergram and his brother, Marshall Pergram, resided at the small village of Olympia in Bath county, Ky., on the line of the Chesapeake & Ohio Railway

Company. Appellant's home was about 150 yards from the railway station. Curtis Crouch, a cousin of the Pergrams, resided about a mile from Olympia. Ill feeling existed between appellant and Crouch, and there is some evidence that appellant had threatened to kill Crouch, though the credibility of the witnesses who testified to the threats is attacked. On Sunday afternoon, April 6, 1930, shortly before the east-bound passenger train was due, Crouch arrived at the station and was seated on an express truck when appellant arrived. Crouch was carrying two pistols in holsters, and appellant also was armed with a pistol. According to a number of witnesses who were present, appellant walked up to Crouch, who was whittling on a piece of wood, and said, "Why do you put your hand in your pocket everytime I come around?" According to one witness, he said, "Don't draw any gun on me," and Crouch replied, "I am not. I am just putting my knife in my pocket." A few more words passed between them which were not heard by those present, and they then clinched and fell to the ground. Each had a pistol in his hand. At this point all of the bystanders fled, and the evidence as to just what occurred is not clear. They were between the main track and a sidetrack, and remained on the ground struggling until the train arrived. One witness, who was on the train, testified that when the train stopped the men were on the ground opposite the window at which he was seated and that he heard the small man (appellant) ask the other to let him up, and that Crouch replied, "You will shoot me if I do." The men were still on the ground when the train left. They got to their feet and began shooting, but there is a conflict in the evidence as to who fired the first shot. Appellant claimed that deceased shot him while appellant was on the ground, but the weight of the evidence indicates that appellant fired the first shot. During the fight one of the bystanders ran to the Pergram home about 150 yards away and told appellant's brother, Marshall Pergram, that appellant and Crouch were fighting. Marshall Pergram armed himself with a pistol and went to the scene of the trouble. When he arrived on the scene appellant had emptied his pistol, which was an automatic containing eight shells, and Crouch had sunk to the ground and was in a sitting position, but with one pistol still in his hand. Marshall Pergram fired several shots at him, and there is some evidence that Crouch fired at least one shot at Marshall.

Appellant's contention that there was evidence authorizing an instruction on his right to shoot in defense of his brother is not supported by the record. His contention is based on the testimony of Mrs. Mary Blevins and Mrs. Sam Berry, witnesses for the commonwealth, but when their testimony is analyzed it is found that they do not testify to any facts indicating that appellant knew his brother was present before he ceased firing. Mrs. Blevins merely said that after appellant had fired several shots and had gone to the corner of the railroad station his brother appeared and both of them then shot at Crouch, who was on the ground. Mrs. Berry, who was at her home some distance away, heard the shooting and went to the window. She saw two men standing by the railroad station firing at Crouch who was on the ground. Crouch's body was rolling from side to side, and he was making no effort to shoot at the Pergrams. All of the other witnesses testified that appellant had ceased firing and had started away when his brother arrived, and that Marshall Pergram then fired several shots at Crouch who was on the ground. Appellant testified that he had emptied his pistol before his brother arrived. Even if Marshall Pergram was in sight and near enough to take part in the encounter before appellant ceased firing, it is clear that appellant was not aware of his presence and could not have fired in defense of his brother.

Vick v. Commonwealth, 236 Ky. 436, 33 S. W. (2d) 297, is cited as authority for the rule that under a plea of not guilty the trial court must instruct on any defense which the evidence tends to establish whether it be supported by evidence presented by the accused or introduced on behalf of the commonwealth. But, as heretofore pointed out, the appellant stated clearly and unequivocally that he was unaware of his brother's presence until after he had emptied his pistol and that he fired only in his own defense. The testimony of Mrs. Blevins and Mrs. Berry is not inconsistent on this point with appellant's own testimony, and consequently the evidence did not warrant an instruction on the right of appellant to shoot in defense of his brother. On the other hand, the rule is well settled that an instruction should not be given upon a theory that is without evidence to sustain it. Caudill v. Commonwealth, 228 Ky. 722, 15 S. W. (2d) 435; Morgan v. Commonwealth, 228 Ky. 432, 15 S. W. (2d) 273; Castle v. Commonwealth, 228

Ky. 151, 14 S. W. (2d) 387; Kindrick v. Commonwealth, 226 Ky. 144, 10 S. W. (2d) 639.

The qualification of the self-defense instruction, by making it inapplicable if the appellant and deceased voluntarily entered into the difficulty with intention on the part of each to kill the other, or if the appellant brought on the difficulty, was warranted under the circumstances in both respects. The qualification contained in instruction No. 4, which was the instruction on self-defense, reads as follows:

"But if the jury believe from the evidence, beyond a reasonable doubt, that the combat was voluntarily engaged in by both the defendant, James Pergram, and Curtis Crouch with the intention on the part of James Pergram, the defendant, or Curtis Crouch, each to kill the other, or to do each other great bodily harm, then you cannot acquit the defendant on the grounds of self-defense or apparent necessity."

There was evidence that appellant had threatened to kill the deceased, that ill feeling existed between them, and that appellant went armed to the place where deceased was and began an angry conversation which led to the fatal shooting. There was evidence from which the jury might infer that both parties prepared themselves for the meeting and voluntarily entered into the difficulty. The instruction embraced the necessary elements of the "mutual combat" rule. Gambrel v. Commonwealth, 241 Ky. 39, 43 S. W. (2d) 335; Mills v. Commonwealth, 240 Ky. 359, 42 S. W. (2d) 505.

Instruction No. 5 reads:

"The Court instructs the jury that the defendant had the right to ask the deceased, Curtis Crouch, 'Why he put his hands in his pockets when I come around.' The language used in itself would not justify an assault and battery upon the defendant by the deceased unless it was so intended by defendant when used to provoke an assault and battery.

"Yet if you believe from the evidence, beyond a reasonable doubt, that at the time the defendant, James Pergram, approached the deceased, if he did do so, and used language as above stated, or similar

language to that above stated, and by use of same intended thereby to provoke a difficulty or combat by the use of the language, or bring about a difficulty or combat with the deceased, and that the defendant wilfully and feloniously brought on the difficulty as stated herein with the intention of killing him, and thereby making the danger to himself on the part of Curtis Crouch excusable or justfiable in the protection of himself, or that the defendant, James Pergram, and the said Curtis Crouch voluntarily entered into the difficulty or combat with intention on the part of each to kill the other, or do the other some great bodily harm, then in either event as stated herein you cannot acquit the defendant on the grounds of self-defense or apparent necessity.''

The chief criticism leveled at this instruction is that there is no proof to authorize it. Under the facts of the case it was for the jury to say whether the appellant by his demeanor and the language used by him when he met the deceased intended to and did bring on the difficulty. A difficulty may be provoked by threatening acts or by the use of insulting language. Jones v. Commonwealth, 186 Ky. 283, 216 S. W. 607; Harris v. Commonwealth, 140 Ky. 41, 130 S. W. 801; Hays v. Commonwealth, 14 S. W. 833, 12 Ky. Law Rep. 611.

The facts here are somewhat similar to those in Commonwealth v. Ashcraft, 224 Ky. 203, 5 S. W. (2d) 1067, 1068, where, in certifying the law, it was held that the trial court erred in refusing to qualify the instruction on self-defense, the court saying:

''There was proof to the effect that there was prior bad feeling between deceased and defendant and that the latter on some occasions had made threats concerning him, but deceased made no demonstration to do defendant harm on any of the prior occasions when they had met. Defendant in his testimony denied that he was carrying his pistol for the purpose of harming the deceased, and stated that he carried it 'tolerably regular all the time,' and that he was doing so 'to protect myself, my own person.' Under the testimony as so adduced, we are of the opinion that the court erred in not giving the qualification contended for.''

After a review of the authorities it was said:

> "Our examination of other text authorities and acknowledged authors on criminal law has convinced us that the great weight of authority is to the effect that the provoking acts on the part of defendant, so as to deprive him of the right of self-defense, need not be such as would create the right of self-defense on the part of the deceased had he slain defendant because of the latter's provoking acts and conduct."

There was ample evidence considering the state of feeling between appellant and Crouch and the place and manner of the meeting from which the jury might reasonably infer that appellant sought out the deceased and brought on the difficulty.

Instruction No. 4 is also criticized because the disjunctive "or" is used instead of the conjunctive "and" where it refers to the intention of appellant and deceased to kill each other. When the instructions are read as a whole we are convinced the jury could not have been misled by this palpable inadvertence. The error, if any, was cured by instruction No. 5 where the qualification is repeated in correct form. The fact that the "mutual combat" qualification appears in two instructions is also relied on as an error because it is thus given undue prominence. We are satisfied that the repetition of this proviso could not have influenced the jury and that it was therefore not prejudicial. Moore v. Commonwealth, 223 Ky. 128, 3 S. W. (2d) 190.

A careful examination of the record leads to the conclusion that appellant has had a fair trial and has been dealt with leniently by the jury.

Judgment affirmed.