## Wilson v. Commonwealth.

(Decided March 8, 1932).

334

SAMUEL H. MONARCH for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

Under an indictment charging the appellant, Burnie Wilson, and his brother, Dave Wilson, with the murder of Oscar O'Bannon, on a separate trial he was found guilty of manslaughter and sentenced to two years in the penitentiary.

It appears there was ill feeling between these two brothers and the deceased and his brother, Clark O'Bannon. On a Sunday morning in September, 1930, in the village of Harned, it appears that Clark O'Bannon came down the road near the front of a store conducted by the appellant, before which Dave Wilson was standing whittling on a piece of wood. A fight between these two men occurred, and the evidence for the commonwealth was that the appellant joined in the fight and knocked Clark down. Either the blow or the fall on a

rock rendered him unconscious. It is also testified that while in that condition Dave Wilson stamped him. About that time Clark's brother, Oscar O'Bannon, the deceased, came up and began shooting at Dave Wilson. Several shots took effect, but not so as to incapacitate him. When his pistol was emptied he started away and fell, and both Dave and Burnie ran to him. A number of witnesses say that both men struck him several blows, each having a piece of iron in his hand, and also that they kicked the prostrate man. Some witnesses say they could not tell what it was that Burnie had in his hands with which he struck the fallen man. O'Bannon's skull was badly fractured and he lived only a few minutes after the doctor arrived to attend him. He was beaten to death.

The defendant and several witnesses contradict the evidence of the commonwealth. Their testimony is that the appellant, Burnie Wilson, intervened as a peacemaker in the fight between his brother, Dave, and Clark O'Bannon; that he never mistreated the man in any way. Also that he was performing the same office during the fatal fight between Dave Wilson and Oscar O'Bannon. Their testimony is that Dave struck the deceased with a short piece of iron in self-defense and that the appellant never struck him at all.

The court instructed the jury on murder and manslaughter committed either directly by the appellant or by aiding and abetting his brother. Counsel argue that he was entitled to further instructions covering striking and wounding, both maliciously and in sudden heat of passion or sudden affray, and also on assault and battery. The evidence did not warrant any of those instructions. There was no separate attack or unconnected relation between the appellant and his brother such as appeared in Gill v. Commonwealth, 235 Ky. 351, 31 S. W. (2d) 608; or Pergram v. Commonwealth, 241 Ky. 387, 44 S. W. (2d) 277.

According to the evidence tending to prove the appellant guilty, he jointly and actively participated with his brother, and both men were raining blows upon the deceased at the same time and death resulted from injuries thus inflicted. According to the defendant and his witnesses, he never struck the man at all or aided his brother in any way. While it is the duty of the court to give the jury the whole law applicable to every state

of the case supported by the evidence, it is not necessary that instructions should be given relating to a theory of guilt or innocence which finds no support in the evidence. Daniel v. Commonwealth, 198 Ky. 158, 248 S. W. 511. Day v. Commonwealth 173 Ky. 269, 191 S. W. 105. If the jury believed the evidence of the commonwealth, the defendant was guilty of murder or manslaughter, whether it was his blow or his brother's blow that caused the death, for there was a clear concert of action, and it is the law that each individual whose will contributed to the wrongdoing is responsible for the whole the same as though performed by himself alone. Philpot v. Commonwealth, 240 Ky. 289, 42 S. W. (2d) 317.

In his motion for a new trial, the defendant charged that the jury had not been kept together during the night as is required by section 244 of the Criminal Code of Practice. In a supporting affidavit, the defendant stated he had no knowledge or information of that alleged fact until after the rendition of the verdict. When a defendant has knowledge of a separation of the jury and makes no objection at the time, he will be deemed to have consented thereto. Vinegar v. Commonwealth, 104 Ky. 106, 46 S. W. 510, 20 Ky. Law Rep. 412; Keith v. Commonwealth, 195 Ky. 635, 243 S. W. 293. But where he has no previous information that there was a separation, he may raise the point in his motion for a new trial and the action of the court thereon is reviewable. Campbell v. Commonwealth, 162 Ky. 106, 172 S. W. 110.

It was shown by defendant's affidavit that the sheriff and one of the deputy sheriffs in charge of the jury were unfriendly to him; that six of the jury occupied a room at one end of a hall in the hotel and the others occupied two rooms at the other end of the hall, four men in one and two in the other; that this was the only hotel in the county seat, and a large crowd stayed there, including the commonwealth's attorney and an attorney employed to assist in the prosecution; and that a brother of deceased ate there while the jury was quartered in the hotel. There are two other statements charging separations and opportunities for interference, but save one, in which there is no merit whatsoever, those charges appear to have been abandoned. The county attorney and two deputy sheriffs made affidavits that in open court counsel for the defendant had consented to the placing of the jury in two rooms at the hotel because of the

inability of the sheriff to find one room in which all of the jury might be kept. The deputy sheriffs say that six of the jury were kept in a room by one of the deputy sheriffs; that the other six were in charge of another officer in another room in which there was a partition having an open door and a large opening intended for a window. There was no door to the little room or alcove except that leading into the larger room. It was practically one room. The officer's bed was placed in the hall doorway in that room and he was in such position to be able to observe all six of the men at all times, and says that none of the jurors could have left the room or been communicated with without his knowledge. In rebuttal the defendant and his counsel deny that any agreement was made with respect to the keeping of the jury, except that they stated to the court they would make no objection to the jury being kept in a double room or two adjoining rooms with an open door between.

A substantial performance of the duty resting upon the officers in charge of a jury is sufficient, as where he remained in such convenient situation as to observe and prevent any attempt to tamper with the jury or any irregularity on their part. That duty was held to have been performed where the jury was kept in adjoining and connected apartments and the officer was in the same or adjoining or connected room. Commonwealth v. Shields, 65 Ky. (2 Bush) 81. In Minor v. Commonwealth, 5 Ky. Law Rep. 176, 12 Ky. Op. 211, it was held that the lodging of the jury at a hotel in different rooms along the same hall in which the sheriff locked them at night, and it was shown there had been no tampering with the jury, was a sufficient compliance with the requirements of the Code. Such is this record. In Adkins v. Commonwealth, 197 Ky. 385, 247 S. W. 26, this subject and the cases on it are reviewed. It was held in that case that there was no separation requiring a reversal of the judgment where the jury was kept at the residence of the jailer, quartered in two rooms so arranged as to require any one going in and out thereof to pass the bed in which the officer was sleeping, and it appeared that there was no communication between the jurors and any one else.

The granting or refusal of a new trial on this ground was under the circumstances disclosed peculiarly within the discretion of the circuit judge. He was in

position to reconcile the different statements and misunderstanding as to what had occurred before him about keeping the jury in separate rooms, and doubtless he was personally familiar with the conditions under which they were kept at the hotel. We cannot say he committed prejudicial error in his ruling.

There is an objection to the admission of a trival answer of a witness concerning Clark O'Bannon's condition when he had been knocked down. But the ground is so clearly without merit as not to warrant a discussion.

Perceiving no prejudicial error, the judgment is affirmed.