## Grau v. Commonwealth.

(Decided September 23, 1919.)

### Appeal from Christian Circuit Court.

1. Criminal Law—Accomplice.—The mere fact that one is jointly indicted with another does not render him an accomplice or bring him within the rule covered by section 241 Criminal Code. But if the witness, whether jointly indicted or not, appears from

the evidence to have participated in the crime charged, section 241 of the Criminal Code does apply.

2. Criminal Law—Evidence—Discretion.—The trial court has a broad discretion in the admission of testimony in chief by rebuttal witnesses.

3. Criminal Law—Self-Defense—Instructions.—Where the defendant does not claim self-defense, and the evidence of the Commonwealth tends to show the defendant the principal in the crime and the witness an innocent bystander only, while the evidence for the defendant tends to prove the witness the principal perpetrator and the defendant in no wise connected with the commission of the felony, there being no evidence whatever of a struggle or an effort to fight on the part of the deceased at the time or just before he was killed, the court properly declined to give an instruction upon self-defense.

R. A. COOK and BREATHITT & ALLEN for appellant.

DENNY P. SMITH, S. T. FRUIT and CHAS. H. MORRIS, Attorney General, O. S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The grand jury of Christian county returned an indictment in March, 1919, accusing Oscar Cooley, Mamie Cooley and Claude Grau of the crime of willful murder, committed by killing Drew Ross on December 3, 1917. The defendants were arrested and a continuance granted until the June term, at which time defendants asked for a severance of trial, which was granted, and the Commonwealth elected to try Claude Grau first. A jury was empaneled and a trial had, resulting in a verdict of guilty and Grau's punishment fixed at ten years' confinement in the state penitentiary. Motion and grounds for a new trial being overruled and judgment entered, Grau prosecutes this appeal.

Appellant insists that the judgment should be reversed, (1) because the verdict was rested upon the unsupported evidence of an accomplice, and the court failed to instruct the jury as required by section 241 of the Criminal Code; (2) the court erred to the prejudice of appellant in admitting testimony in chief after the defendant had closed in chief; (3) the court admitted testimony of witnesses as to statements made by Mamie Cooley, one of the defendants, in the absence of appellant; (4) the court erred to the prejudice of appellant in failing to instruct the jury upon the whole law of the case, in this—no instruction upon self-defense was given.

After a brief statement of the facts, we will consider each of these grounds separately in the order named.

Oscar and Mamie Cooley are husband and wife; they resided in a little two room house in the suburbs of Hopkinsville for some weeks before the killing of Ross in December, 1917. This house consisted of one main room and a kitchen or leanto; near the house are the L. & N. Railroad tracks and a water tank. This part of town is sparsely settled. The Cooleys were running a disorderly house. Men were permitted to congregate there and engage in gambling and other immoral practices. The house furnished intoxicating liquors to its patrons. On the night in question both Cooley and his wife were at home, and a colored servant girl of the house was there also; appellant Grau did not live at the house but he was a frequenter of the place.

From the evidence we learn that Grau was the paramour of Mamie Cooley; by trade Claude Grau was a baker and at the time had a job with a bakery in Hopkinsville. Several years previous to that time he had been engaged in railroading, and after the death of Ross he again accepted a place as fireman on the railroad. On the night of the death of Ross, Grau claims he came to the Cooley home about 8:30 or 9 o'clock and shortly thereafter several men came in, and at the suggestion of Oscar Cooley, Grau drove a buggy down to a saloon to get a case of beer and a quart of whiskey to be served at the house that night. He says that when he returned to the house about 9 or 9:30 Oscar Cooley invited him to take a drink of liquor, which he did in the kitchen, and then left for home, arriving there about 10:15; talked to his sister and went to bed and did not leave the house again that night. He is supported in this story by his sister and by Mamie Cooley, who testified that after Grau left the house, Ross and Oscar Cooley and two or three other men were on the floor playing poker when Ross complained that he was being cheated in the game. From this a quarrel started and one of the men struck Ross, thereupon Oscar Cooley went into the kitchen, took a pistol from the stove where it had been hidden and came back into the room where the game had been played, and found Ross standing up in the floor saying, "Whoever says I have not been cheated is a liar," whereupon Oscar Cooley shot Ross, the bullet entering near the heart, and Ross fell on the floor dying. After a brief conference, according to the testimony of Mamie Cooley, the men engaged in the game, except her

husband Oscar, carried the body away in the direction of the railroad.

Some time in the early morning the body was found by a policeman lying across the railroad track with the bullet hole in the body almost exactly over the rail. Instead of placing the body on the main track where the train passed, the perpetrators of the crime, by mistake, placed the body on the sidetrack and the train did not strike it.

The husband, Oscar Cooley, also testified but he told quite a different story. He stated that some months before the occurrence he had been paralyzed in his left side so that he could scarcely walk; that Claude Grau, Mamie Cooley and himself were in the main room of the house about 8 o'clock on the evening on which Ross met his death; that some one knocked on the door and Mamie told Grau and her husband to go into the kitchen and they went in there, Cooley taking a seat on the ice box and Grau at a table or stove; while they were in there they heard the voice of a man in the front room quarreling with Mamie, and Grau got up and went to the middle door to listen. Oscar Cooley testified that occasionally he could hear the man in the front room cursing; after listening at the door for a few minutes, Grau, according to Oscar Cooley, went to the stove, took a pistol from it and went into the front room where Mamie and the man were quarreling, and in about a minute after he went in there a shot was fired, whereupon Oscar Cooley got down off the ice box and went into the front room, and found Claude Grau standing there with a pistol in his hand, and Drew Ross lying on the floor dead or dying with a bullet wound in his breast. Oscar Cooley further testified that he said to Claude Grau, "Now you have played the devil," to which Grau replied in substance, "That does not make any difference, he is just a country man"; and shortly thereafter Grau and Mamie took the body, carried it to the railroad and laid it across the track, left it and came back to the house; that later that night Mamie cut a piece from the carpet upon which there was blood and burned it. There was some testimony in corroboration of the evidence of Oscar Cooley, but it was slight. All the evidence, however, tends to show that the murder occurred in the front room of the Cooley home and that the dead man's pockets were rifled.

With this brief statement of the facts, let us take up and consider the several reasons offered by the appellant for a reversal of the judgment.

(1) According to the evidence of Oscar Cooley, he did not aid, assist, encourage or counsel Grau or anyone else in the killing of Ross. He was but an innocent bystander, if his evidence is to be believed. If we accept the evidence of Mamie Cooley, her husband was principal and not an accomplice. Claude Grau was not present and did not aid or assist in the killing. If Oscar Cooley is in any manner responsible for the death of Ross, it was as principal and not as aider and abettor. There is no evidence in this record which would justify the conclusion that Oscar Cooley was an accomplice to the crime. This being true, under the rules stated in the case of Anderson v. Commonwealth, 181 Ky. 310, requiring the fact of the participation of the witness in the crime to be established by evidence before his status as an accomplice is fixed, and holding that the joint indictment of the witness with the perpetrator of the crime is not in itself sufficient to warrant the court in giving an instruction concerning the testimony of an accomplice, under section 241, Criminal Code, it was not error for the court to submit the case to the jury without an instruction telling the jury that a conviction could not be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the crime. In fact it would have been error for the court, under the facts of this case, to have so instructed the jury. A case very similar to the one at bar is styled Oakley v. Commonwealth, 158 Ky. 474. There we said, ''If not an accomplice it is not necessary that there should be any corroboration of the evidence of the witness within the meaning of section 241 of the Criminal Code.'' In that case, as in this one, the witness was accused by the defendant of participation in the crime and the witness accused the defendant, and we said, ''There is, therefore, in the theory of neither party, any claim that both were guilty. Either appellant alone is guilty or Manning alone is guilty. This was equally true under the theory of the defense as well as of the prosecution; and the parties were not accomplices.'' Applying that rule to this case, it is clear that Oscar Cooley was not an accomplice to Grau in the killing of Ross. If you believe the evidence for the defendant, Grau, then Oscar Cooley was the principal and Grau not connected in any manner whatever with the killing. If, on the other hand, you accept the evidence of the prosecution, Oscar Cooley

was in no manner connected with the killing of Ross and Grau was the principal and his paramour perhaps an aider and abettor. Thus it is seen that Oscar Cooley was not an accomplice within the meaning of section 241 Criminal Code, and the court quite properly omitted an instruction concerning the testimony of an accomplice. Levering v. Commonwealth, 132 Ky. 666; Oakley v. Commonwealth, *supra;* Commonwealth v. Barton, 153 Ky. 465; Elmendorf v. Commonwealth, 171 Ky. 410; Owens v. Commonwealth, 181 Ky. 378; Belcher v. Commonwealth, 181 Ky. 516.

(2) Complaint is made that the Commonwealth was permitted to introduce John Chaffin on a matter in chief after the defendant had concluded his evidence. Ordinarily this is prejudicial error, but it must be remembered that the trial court has a wide discretion in the admission of such evidence. The facts of this case considered, we do not regard the ruling of the court as reversible error. During the examination of a witness, Chaffin came into the court room and counsel for Commonwealth in open court remarked, "John Chaffin is here. Want me to introduce him and then cross-examine him on what John says?" To which counsel for defendant answered, "I don't know as it makes any difference." By this conversation you will see that the attorney for the Commonwealth informed counsel for defendant that the witness had arrived and offered then to introduce Chaffin before concluding the examination of the defendant. At that time counsel for defendant did not think it important, saying, "I don't know as it makes any difference."

For another and better reason we do not think the court committed prejudicial error in allowing this evidence after the defendant had closed. Chaffin testifies concerning a conversation had between the witness for the defendant, Mamie Cooley, and appellant, Grau, in which Grau was accusing Mamie Cooley of the commission of some crime and said in substance that he knew enough on her to break her neck. This same conversation in substance was detailed by other witnesses in chief. This evidence was no surprise but was thoroughly established by several persons who heard Grau and his paramour talking. In the case of Smith v. Commonwealth, 154 Ky. 623, we held that "the trial court has a reasonable discretion in admitting testimony in chief by rebuttal witnesses. It is only in very rare instances that a reversal will be decreed on this ground."

(3) It is complained that a witness was permitted to testify concerning what Mamie Cooley said at a time when appellant Grau was absent. This evidence is included in the following question and answer: "Q. I will ask you if Mamie Cooley told you some time last fall that a little black headed man in the army helped her and Claude Grau take this man from the house to the railroad?" "A. She told me that a little black headed man in the war helped to do this killing and she could send to the war and bring him back, but she was not going to do it." This evidence was allowed to be introduced for the purpose of contradicting the witness for the defendant, Mamie Cooley, and the court very properly admonished the jury that they could consider this evidence for the purpose of contradicting Mamie Cooley, if in their judgment it did so do. Mamie had been asked whether she had made such a statement to the witness and had denied making the statement. Thereupon they called this witness who contradicted Mamie Cooley.

(4) It is the contention of appellant Grau that it was the duty of the court to give the whole law of the case, and that the court erred in failing to give an instruction upon self-defense. Grau's defense is an alibi. He contends he was not present at the time of the killing and does not know any of the facts immediately surrounding the murder of Ross. If his contentions be true, then there was no self-defense. If we take the contention of the Commonwealth, it is likewise true that there was no ground for or claim of self-defense as between appellant Grau and deceased Ross. From the evidence produced by the Commonwealth, we learn that Oscar Cooley and appellant Grau were in the kitchen, having retired to that room at the suggestion of Mamie Cooley when some one knocked on the front door. It appears that Mamie was expecting another visitor and she did not want her husband or her paramour present. The door was closed between the two rooms. Oscar Cooley and appellant Grau could hear the persons talking in the next room, and could understand some parts of the conversation. Enough was heard to let them understand that a quarrel was in progress between Mamie and some man in the front room. Appellant arose, went to the door and listened. No doubt he could hear much better than the witness Oscar Cooley. At any rate he became enraged, according to the evidence of Oscar Cooley, and turning to the stove, took a pistol therefrom and went im-

mediately into the front room where Mamie, his para-
mour, and the man were in a quarrel, and immediately
fired the shot which killed Ross. Up to that moment
Grau had not participated in the quarrel. There was no
struggle. At least there is no evidence of a struggle and
no claim by anyone that there was a struggle; no offer to
fight; no resistance offered by Ross so far as the evidence
shows. Since appellant did not claim self-defense and
did not claim or show that he fired in self-defense, it was
wholly unnecessary for the court to instruct upon his
right to protect himself.

It is a well recognized rule that a trial court will in-
struct only upon the issues involved in the trial and it is
neither necessary nor proper to give an instruction un-
less there is some evidence upon which to base it. Barnes
v. Commonwealth, 179 Ky. 725.

It is also contended by appellant that it is the duty
of the trial court to give the whole law of the case wheth-
er asked to do so or not, and this is the rule. While he
made no objection to the instructions as given, except
perhaps a formal one, in his motion and grounds for a
new trial we find the following: "Because the court erred
in giving instructions Nos. 1, 2, 3, and 4, to the giving of
which the defendant objected and excepted and on this
the defendant prays judgment of the court." On this
appeal no objection is made to the instructions given but
complaint is made that a self-defense instruction should
have been given. If it were the duty of the court to have
given an instruction upon self-defense, the question was
not raised by the defendant either at the time or by his
motion and grounds for a new trial, because in his motion
he complains only of the instructions given, and not that
the court failed to give the whole law of the case. Hav-
ing failed to make objection at the time or to include it in
his motion and grounds for a new trial, he waived his
right in this court to complain of the failure of the court
to give the whole law of the case; and this is true notwith-
standing the rule requiring the trial court to give the
whole law of the case. This rule is well stated in the
recent case of Owens v. Commonwealth, 181 Ky. 381,
where it is said, "But aside from this it does not appear
from the record that the instructions given or the failure
to give other instructions was mentioned or relied on in
the motion and grounds for a new trial, and this being so,
even if error was committed by the trial court in giving
improper or failing to give proper instructions, the error

would not be available on appeal.'' In other words, it is incumbent upon appellant to present his objection in his motion and grounds for a new trial, so that the trial court may have an opportunity to correct the error, if error there be, and if he neglects to make complaint of the court's failure to instruct the jury upon the whole law of the case, his objection is waived. Thompson v. Commonwealth, 122 Ky. 501; Cheek v. Commonwealth, 162 Ky. 56; Polk v. Commonwealth, 162 Ky. 613.

From a review of all the evidence we are thoroughly convinced that appellant Grau is guilty of the homicide, and that his punishment is extremely light considering the enormity of the crime.

No substantial error to the prejudice of appellant appearing, the judgment is affirmed.