## Nickells v. Commonwealth.

(Decided November 20, 1931.)

JOHN T REDWINE, M. M. REDWINE and V. H. REDWINE for appellant.

J. W. CAMMACK, Attorney General, and A. M. SAMUELS for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellant and Bill Rose were jointly indicted for the murder of Russell Harper. On his separate trial, appellant was convicted of manslaughter, and sentenced to serve twenty-one years in the penitentiary. It is not wholly clear from appellant's brief as to just what grounds are relied upon for a reversal of the judgment, but the grounds chiefly argued are that the trial court erred (1) in refusing to grant him a continuance, and (2) in giving the instruction on reasonable doubt.

A bitter feeling existed between the Harper and Nickells families. A few years prior to the killing of

Russell Harper, appellant's father had killed Oscar Harper, a brother of Russell. On the day the killing in question occurred, Russell Harper had attended a church service held in a schoolhouse near the Harper and Nickells homes. According to the evidence of both the commonwealth and appellant, Harper was at least partially under the influence of liquor, and guilty of unbecoming conduct at the schoolhouse where the religious services were being held. According to one witness, he fired two shots from a pistol into the door of the schoolhouse. While deceased and two or three others were standing near the schoolhouse, appellant rode up on a horse, and he claims that he heard the deceased say, "There's Edd Nickells and I am going to kill the s—— of a b——." Appellant turned his horse and rode down the road toward his home. A few minutes later, five to ten minutes according to most of the witnesses, deceased started on horseback in the direction that appellant had gone. Shortly thereafter, three reports from a gun were heard by those persons who remained at the schoolhouse. The body of deceased was found lying in the road about three quarters of a mile from the schoolhouse, and his pistol a few feet from his body. Appellant claims that he overtook his sister, Early Williams, and his codefendant, Bill Rose, who were walking along the road; that deceased came up behind them with his pistol drawn saying, "I am going to kill you, wait there," and that he, appellant, jumped from his horse and fired three shots, one striking the horse, on which the deceased was riding, in the neck, and the third shot striking and killing deceased. He is corroborated by his sister and Bill Rose.

It is the theory of the commonwealth that appellant rode down the road ahead of deceased, concealed himself behind a stump on the side of the road, and shot the deceased as he passed. Several witnesses testified that appellant rode away rapidly from the schoolhouse, and that deceased followed him at a leisurely gait five or ten minutes later. One witness, who was traveling along the road in the direction opposite to that in which appellant and deceased were traveling, testified that he heard the three shots fired by appellant, and that, after turning a bend in the road, he saw the deceased lying on the ground and appellant walking away. Appellant drew his pistol on the witness and told him, as expressed by the witness, to "beat it". Several witnesses who arrived

on the scene soon after the shooting examined the deceased's gun and person. No shells, empty or loaded, were in the gun, and none were found on deceased's person. Tracks were found leading to a stump on the side of the road near the point where the body of deceased was found, and tracks in the freshly thawed ground behind the stump indicated that some one had been standing there recently. It was also shown that deceased had exhibited his gun while at the schoolhouse; that it had been examined by others there present who found it empty, and that deceased had stated he had fired his last cartridge and had none with him. There was some evidence that appellant heard deceased make this statement. The evidence was amply sufficient to take the case to the jury and to sustain its verdict.

It is impossible to determine from the bill of exceptions what occurred in regard to appellant's motion for a continuance. The case was called for trial on July 16, 1931, and a motion for a continuance on account of absent witnesses was filed. In his affidavit in support of his motion for a continuance, appellant named Belle McGuire, May Thompson, and his sister, Early Williams as the absent witnesses, and he set out what he would prove by them if they were present. His motion for a continuance was overruled, but the court passed the case and reassigned it for trial on July 22, 1931. When the case was called for trial on July 22, appellant's motion for a separate trial was sustained. The bill of exceptions contains the following statement as to what then occurred: "Whereupon the defendant, Edd Nickells, by counsel announced ready for trial with the compulsory process of the court. Attachment for any absent witness which counsel would name were ordered by the court and the defendant, Edd Nickells, was alone placed on trial." The testimony of the various witnesses introduced by the commonwealth and the defendant is then set out in narrative form.

Among the witnesses introduced by the defendant were Early Williams, Belle McGuire and May Thompson, the three named in his affidavit for a continuance. Their testimony is set out in the bill of exceptions. After setting out the testimony of the various witnesses, the bill of exceptions contains this statement: "At this time the defendant presented to the court the affidavit of Edd Nickells as to what he would prove by certain absent witnesses, this being a different affidavit setting forth the

testimony of different witnesses from that which was filed on the first call of the case, the same not having been filed at the beginning of the trial. The commonwealth objected to the reading of the affidavit which objection was sustained by the court, to which ruling of the court the defendant objected and excepted to at the time. The affidavit reads as follows:''. Then follows what is styled an amended affidavit in which the affiants state that May Thompson and Belle McGuire, two of the witnesses named in the original affidavit, were in the state of Ohio, and that Early Williams, the other witness named in the original affidavit, was in Greenup county, Ky., and was sick and unable to be present. This amended affidavit was signed by Edd Nickells and Bill Rose, and was sworn to by them before J. K. Williams, clerk, on July 16, 1931, which was six days before the case was tried. The bill of exceptions was prepared by appellant's attorney, and, while we are unable to determine from it all that occurred at the trial respecting the motion for a continuance, we must assume from the statements contained therein that the witnesses referred to in the motion appeared at the trial and testified.

The purpose of a bill of exceptions is to bring before this court the record, authenticated by the trial judge, of things that transpired on the trial that do not appear on the record book of the trial court. Broadway & Newport Bridge Company v. Commonwealth, 173 Ky. 165, 190 S. W. 715. It should present a true picture of events occurring during the trial which are not disclosed by the clerk's transcript of the record, and this court should not be required to speculate or surmise as to what actually transpired. The only reference to the motion for a continuance appearing in the clerk's transcript of the record is the following order entered on July 16, 1931: ''This cause having been set for trial on the fourth day of the present term of this court, the defendant moves the court for continuance and files his own affidavits in support of same. The court overrules said motion and by agreement the case was passed and set for trial on the ninth day of the present term of this court.'' We conclude that the bill of exceptions discloses no error in respect of the court's ruling on appellant's motion for a continuance.

The instruction, of which appellant complains, reads as follows: ''If from all the evidence the jury have a reasonable doubt of the defendant having been proven guilty they will find him not guilty.'' The appellant

offered the following instruction, which he insists should have been given: "The defendant is presumed innocent until proven guilty beyond a reasonable doubt, and unless the jury believe that the defendant has been proven guilty beyond a reasonable doubt, they will find him not guilty." The instruction given by the court conforms substantially to the Criminal Code of Practice provision on the subject, section 238, which reads: "If there be a reasonable doubt of the defendant being proven to be guilty, he is entitled to an acquittal." It has been held in a number of cases that the instruction as to reasonable doubt should always follow in substance the language of section 238 of the Criminal Code of Practice, and that the court should not enlarge on the language of the Code by saying the law presumes the innocence of the defendant. Brown v. Commonwealth, 198 Ky. 663, 249 S. W. 777; Commonwealth v. Stites, 190 Ky. 402, 227 S. W. 574; Keith v. Commonwealth, 195 Ky. 635, 243 S. W. 293; Frierson v. Commonwealth, 175 Ky. 684, 194 S. W. 914; Renaker v. Commonwealth, 172 Ky. 714, 189 S. W. 928.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.