## Eve v. Commonwealth.

May 2, 1939.

GUY L. DICKINSON and ZEB A. STEWART for appellant.

HUBERT MEREDITH, Attorney General, and WM. F. NEILL, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Oder Eve, was convicted of the crime of willfully and maliciously shooting and wounding Crit Johnson, and his punishment was fixed at confinement in the state penitentiary for a period of ten years. On this appeal the following grounds are relied upon for a reversal of the judgment: (1) Failure of the court to sustain appellant's motion for a directed verdict of acquittal at the conclusion of the Commonwealth's evidence and at the conclusion of all the evidence; (2) errors in the instructions; (3) admission of incompetent evidence; and (4) improper conduct of the Commonwealth's attorney.

The appellant was employed at one time as a butcher at a salary of $17 a week by Speed Campbell, who operated a slaughterhouse near the highway between Barbourville and Corbin. About 16 months before the commission of the offense charged in the indictment, he sold his position to Crit Johnson for a consideration of $75, and thereafter Johnson worked for Campbell as a butcher until June 15, 1938, when the shooting occurred. Johnson was married and lived about 1½ miles from the slaughterhouse. He walked to and from the slaughterhouse, and reported for work each morning at 5 o'clock. On Tuesday morning, June 13, 1938, someone shot at him with a rifle as he was walking along the highway at a point on a curve in the road about ¼ mile from the slaughterhouse. He testified that the shot was fired from a clump of bushes on the hillside near the highway, and apparently was from a .22-caliber rifle. He reported the occurrence to some of his fellow workmen, and one of them advised him to walk on the opposite side of the road when passing the point from which the shot was fired. On Thursday morning, June 15, 1938, someone fired at him with a shotgun at the same point as he was walking along the road on his way to his place of work. The load of shot struck him in the back of the head and shoulders, and he was knocked down. He was taken to the hospital in Barbourville

later, where he remained three or four days. He was seriously wounded, but recovered. It is in evidence that more than 100 No. 4 or 5 shot entered his body. He did not see his assailant, but it appears that appellant was suspected. Johnson's employer, as soon as he learned of the attempted assassination, got into communication with John P. Dail, of LaFollette, Tennessee, who was the owner of several trained bloodhounds. About five or six hours after the shooting Herbert Williams appeared on the scene of the crime with two bloodhounds. Williams was employed by Dail and trained and worked his bloodhounds. He testified concerning the pedigree and training of the bloodhounds and their experience and success in trailing human beings. It is not claimed 'that this preliminary proof was not sufficient to meet the requirements of the rules of admissibility of testimony as to the actions of such dogs as laid down in Bullock v. Commonwealth, 249 Ky. 1, 60 S. W. (2d) 108, 94 A. L. R. 407; Bullock v. Com., 241 Ky. 799, 45 S. W. (2d) 449; and Blair v. Com., 181 Ky. 218, 204 S. W. 67. Williams took the dogs to the point on the hillside from which the shot was fired, and where the fresh tracks of a man appeared on the ground. The dogs took up the trail which led around the hill in the direction of Barbourville, then to the highway and back toward Corbin. When they reached the point where Johnson had been shot a large crowd had congregated, and in the crowd was appellant, who had been in Barbourville, but had been taken from there to the scene of the shooting by the sheriff, though not under arrest. Williams and other witnesses for the Commonwealth testified that the dogs passed through the crowd, went up to the appellant and stopped, which indicated that he was the man they had been trailing. Appellant and one or two of his witnesses denied that the dogs went directly to him or showed any interest in him when they reached the crowd on the road. The dogs were then taken again to the point on the hillside from which they had started, and were put on the back trail of the person who had made the tracks. According to Williams, they went directly to the home of appellant, a distance of about ½ mile, passing five or six houses on the way without stopping.

It was shown that appellant on Monday, June 12, 1938, borrowed a .22-caliber rifle from Irvin Fry, who lived about 1½ miles from the scene of the shooting. The gun was returned to Fry on Wednesday afternoon.

Appellant lived at his parents' home, which was located about 125 yards from the home of Robert Daniels. About 5 o'clock on Wednesday afternoon, June 14, 1938, appellant went to the home of Robert Daniels and tried to borrow a shotgun. He told Daniels he wanted to go squirrel hunting. Daniels refused to let him have the gun, as he wanted to have it in the house during the night, but told him he could have it early the next morning. Appellant appeared at the Daniels home about 3:30 o'clock Thursday morning and the gun was handed to him. Appellant admitted that he borrowed the rifle from Irvin Fry and returned it on Wednesday, and did try to borrow Daniels' shotgun on Wednesday afternoon and went to the Daniels home and got the shotgun before daylight Thursday morning. He testified that he intended to go squirrel hunting, but when he returned to his home it was raining and he decided not to go. His mother was cooking breakfast, and he reclined on the bed until breakfast was ready. He did not leave the house until after 6 o'clock, when he learned that Johnson had been shot. His defense was an alibi, and his testimony to the effect that he was not away from his parents' home on the morning that Johnson was shot was corroborated by the testimony of his father and mother.

Luther Gaddis passed along the highway in an automobile a few minutes after the shooting occurred. He saw a man with a gun standing in the bushes near the place where Johnson was shot, and on direct examination stated that the man with the gun was appellant, but on cross-examination stated that while he was well acquainted with appellant and thought he was the man yet he would not say positively to the jury that he was. John Johnson, who is not related to Crit Johnson, started squirrel hunting about 5 o'clock Wednesday morning, the day before Johnson was shot and the day after someone had shot at him with a rifle. The witness saw Oder Eve with a gun standing in a woodland about 25 yards from the highway and 50 or 75 yards from the place where Crit Johnson was shot the next morning. Floyd Warren left Himyar early Tuesday morning, June 13, 1938, in an automobile driven by Dr. Bill Bingham. They were traveling toward Corbin, and Warren testified that as they passed the place where Johnson was shot he saw appellant sitting in the woodland near the highway. He had a gun, but the witness was unable

to say whether it was a rifle or shotgun. Warren was impeached, but his credibility was a question for the jury. Tennessee Disney, whose husband worked at Campbell's slaughterhouse, testified that a short time before the shooting appellant came to her home with a shotgun, and said he was "going to the slaughterhouse to put some of them under the sod." There was other proof of similar threats of a general nature by appellant. Crit Johnson testified that he and appellant had always been friendly, and that he obtained employment at Campbell's slaughterhouse by paying appellant $75 and taking his place as a butcher. He also testified that appellant offered to repurchase the position for $75 two or three months before the shooting. He refused to accept the offer, but his refusal apparently caused no ill feeling on the part of appellant. The evidence showing appellant's guilt is wholly circumstantial, but the foregoing resume of the salient parts of it demonstrates its sufficiency to authorize the submission of the case to the jury and to sustain its verdict. It was for the jury to weigh it and determine the credibility of the witnesses. If the testimony introduced by the Commonwealth is true, the chain of circumstances shown to exist points unerringly to appellant's guilt.

Appellant complains of certain testimony which was admitted over his objection, and especially that of Luster Johnson, who testified concerning appellant's effort to borrow money from him a few days before the shooting took place. It was the Commonwealth's theory that appellant regretted his action in selling his job to Crit Johnson; that he was desperately in need of money and wished to obtain his old job again; and that this was the motive for the crime. We think the evidence was competent, as it tended to throw light on the motive for the shooting. Appellant was married, but he and his wife were not living together. One of the witnesses for the Commonwealth was asked whether or not appellant was living with his wife at the time of the shooting, and was permitted to answer. This evidence was not relevant, but it could not have been prejudicial. Furthermore, appellant voluntarily stated while on the witness stand that he and his wife had separated and this fact was disclosed by other witnesses without objection. Other bits of evidence are complained of, but they are even less objectionable than the evidence heretofore considered.

Appellant complains of the instructions given by the court, and also insists that the court erred in failing to give an instruction under Section 1242 of the Kentucky Statutes and one on assault and battery. Instruction No. 1 given by the court was under Section 1166 of the Kentucky Statutes, under which the indictment was drawn, instruction No. 2 was on reasonable doubt, and No. 3 defined the words "willfully" and "feloniously." The instructions were not objected to, and the record before us does not disclose whether errors in the instructions were relied upon in the motion and grounds for a new trial. In a criminal case, since it is the duty of the court to give to the jury the whole law applicable to the case although it may not be asked, an objection to the instructions is not required, Barton v. Commonwealth, 238 Ky. 356, 38 S. W. (2d) 218; Allison v. Commonwealth, 227 Ky. 557, 13 S. W. (2d) 769, but errors in instructions given in a criminal case cannot be considered on appeal unless included in the motion and grounds for a new trial. Cheek v. Commonwealth, 162 Ky. 56, 171 S. W. 998; Grau v. Commonwealth, 185 Ky. 111, 214 S. W. 916. The index to the clerk's transcript of the record shows that the order filing motion and grounds for a new trial appears on page 9, and the motion and grounds for a new trial on pages 10 and 11. In the transcript before us, pages 8, 9, 10, and 11 are missing, but on page 12 is the order overruling appellant's motion and grounds for a new trial. We shall treat the transcript of the record, however, as containing the motion and grounds for a new trial, and assume that errors in the instructions were relied on.

Appellant complains because the court failed to define the term "maliciously" as used in instruction No. 1. We have frequently held that failure to define the terms "willfully," "feloniously" and "maliciously" is not prejudicially erroneous. Timberlake v. Commonwealth, 245 Ky. 163, 53 S. W. (2d) 345. It is also argued that the court should have instructed the jury that the law presumes the defendant innocent until proven guilty, but, as said in Nickells v. Commonwealth, 241 Ky. 159, 43 S. W. (2d) 697, 698:

"It has been held in a number of cases that the instruction as to reasonable doubt should always follow in substance the language of section 238 of the Criminal Code of Practice, and that the court

should not enlarge on the language of the Code by saying the law presumes the innocence of the defendant."

Instruction No. 1 required the jury to believe from all the evidence, to the exclusion of a reasonable doubt, that the defendant had been proven guilty, and instruction No. 2 told them, in substance, that if they had a reasonable doubt from all the evidence that he had been proven guilty they should find him "not guilty." The instruction on reasonable doubt followed substantially the language of Section 238 of the Criminal Code of Practice, and was not erroneous.

It is next insisted that an instruction under Section 1242 of the Statutes and one on assault and battery should have been given. Under Section 1242, shooting and wounding another person in a sudden affray or in sudden heat and passion without previous malice and not in self-defense is a misdemeanor. The offense defined in Section 1242 is a lower degree of the offense defined in Section 1166, and an instruction under Section 1242 should be given where the evidence authorizes it. Mullins v. Commonwealth, 276 Ky. 555, 124 S. W. (2d) 788, 792; Gibbons v. Commonwealth, 253 Ky. 72, 68 S. W. (2d) 753; Gill v. Commonwealth, 235 Ky. 351, 31 S. W. (2d) 608. In the present case, appellant claimed that he was not present and did not fire the shot. There was no proof that the shot was fired in a sudden affray or in sudden heat and passion, and, consequently, an instruction under Section 1242 of the Statutes was not authorized. Mullins v. Commonwealth, supra. Appellant was guilty of the crime denounced by Section 1166 of the Statutes or none at all. An instruction on assault and battery was not authorized, since the shooting in a sudden affray or in sudden heat and passion, as defined in Section 1242 of the Statutes, is the only lower degree of the offense of maliciously shooting and wounding. Caldwell v. Commonwealth, 265 Ky. 402, 96 S. W. (2d) 1041. Instruction No. 1 contained the phrase, "not in his self-defense," and complaint is made of this; but as said in Mullins v. Commonwealth, supra, "the self-defense instruction favored rather than prejudiced defendant, since it gave him an avenue of escape which he was not entitled to have opened to him."

It is finally insisted that the Commonwealth's attorney was guilty of misconduct in his argument to the

jury. He stated that he had never recommended a pardon, and that he ought to have had Dr. Logan testify as to the number of shots in Crit Johnson's back. While these statements were irrelevant, they were not calculated to inflame the minds of the jury as argued by appellant.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.