## Short v. Commonwealth.

Oct. 16, 1942.

Leebern Allen and H. H. Rudd for appellant.

Hubert Meredith, Attorney General, and Frank A. Logan, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The grand jury of Owsley County returned an indictment accusing Hubert Frost and appellant jointly of the offense of barn burning, and which is made a crime and punishable by Section 1168 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, the date of the commission of the offense being near midnight of May 16, 1942. Appellant, at his separate trial in June thereafter was convicted and punished by the verdict with confinement in the penitentiary for ten years—the maximum contained in the statute referred to. Appellant's motion for a new trial, which was overruled, contained a number of alleged errors claimed to be sufficiently prejudicial to authorize a reversal of the judgment; but appellant's counsel in their brief filed in this court discuss and rely upon only four of them which are: (1) that the verdict is not sustained by the evidence; (2) failure of the court to properly instruct the jury and overruling appellant's motion for a directed verdict of acquittal, and (3) introduction by the commonwealth of improper evidence over appellant's objections. In determining the appeal we will not attempt to give a detailed statement of the various witnesses who

testified for the commonwealth, but will content ourselves with giving an outline of the substance of the testimony as contained in the record, and disposing of each alleged error in the order above outlined and as discussed in brief of appellant's counsel.

1. Appellant's co-defendant, Frost, owned or operated a more or less aged Model T Ford automobile, and the two defendants got together and rode around over the neighborhood on the day preceding the burning, stopping and lingering at different places where drinks were consumed. The burned barn was located about 150 yards from the residence on the premises and the fire was discovered by Charlie McIntosh, who occupied the dwelling and the farm upon which it was located under some kind of contractual arrangement with his father, who was the actual owner thereof. A number of persons were attracted to the scene of the fire before the barn was totally destroyed, and later the sheriff of the county appeared. He and others began to search and investigate the surroundings in an effort to discover the cause of the fire and, if incendiary, to discover the guilty party or parties. The searching parties discovered the automobile above described parked by the side of the road at a place between a quarter and a half of a mile from the burned barn. Somewhere near daylight the next morning some dogs were brought to the scene and after circling around the place where the barn stood they started toward the place where the automobile had stopped, and they met the two defendants in the indictment before reaching the point where it was abandoned by the side of the road; but no action of the dogs at that point was shown that was calculated to fasten guilt on the defendants in the indictment.

Defendant's counsel moved to strike all of the evidence with reference to the actions of the dogs, claimed to be blood hounds, but which the court overruled with exceptions. In the meantime the sheriff had obtained warrants for both of the accused, which he executed by arresting both of them and they were lated brought before the county judge. While in charge of the sheriff, Frost, appellant's co-defendant, in the immediate presence of appellant, made this statement: "He (Frost) said they was stealing gas from McIntosh's truck. He had a lock on the tank and they couldn't get the plug out, that they had a wrench and got the plug out from the

bottom. He said they had a 2-gallon can and was filling it up and after getting the gas that they was making an effort to get the plug back in when they lit a match and it caught fire," to which appellant made no response, but only smiled, notwithstanding Frost, according to the sheriff, stated on the same occasion that "there was nobody else along but them two." Frost furthermore stated that "he could have been smoking a cigarette and it caught from that." Frost did not testify in the case and his proven statements by the sheriff were uncontradicted.

On the contrary, in testifying in his own behalf, appellant admitted the truth of the statements of his co-defendant to the sheriff, all of which occurred in his (appellant's) presence who said in his testimony that he "never denied it. I never opened my mouth." He denied that his co-defendant, while making the statements testified to by the sheriff, pointed toward him as being present at the time of the starting of the fire. He was then asked and answered these questions:

"Q. Didn't they ask you if you were with him. A. Yes, Sir.

"Q. And didn't you say that you was with him? A. I said I was with him awhile. I didn't deny being with him." He testified that when their automobile went dead Frost undertook to discover and correct the trouble while appellant remained in the car and fell asleep, and that the burning of the barn occurred before he awoke. The testimony of appellant is confusing, disconnected and unnatural, rendering it extremely incredible. He admitted being present and hearing the statements of his co-defendant, as testified to by the sheriff, and that he remained silent and did not contradict them so far as the testimony of his co-defendant attempted to connect him with the commission of the offense. When brought before the county judge for such action as that officer deemed proper each defendant in the indictment, according to the testimony of that officer, proposed to plead guilty and requested permission to do so, but which was denied by the examining tribunal who bound the defendants over to the circuit court under bond for their appearance before it. The testimony of the county judge as to the tendered plea was corroborated by other testimony of the commonwealth. Other more or less incriminating circumstances were proven in the case and when

considered in its entirety we unhesitatingly conclude that the trial court did not err in submitting appellant's guilt to the jury and in overruling his motion for a directed acquittal. It, therefore, follows that this error will have to be and it is overruled.

2. In presenting to this court error (2) counsel attempts to sustain it on the ground of (a) the failure of the court to sustain appellant's motion for an acquittal direction, and (b) that the court told the jury in its instruction that it should punish appellant as set out in Section 1167 of our statutes supra, instead of the punishment prescribed in Section 1168 under which the indictment was drawn. Argument (a) is chiefly directed and attempted to be supported because of an alleged variance between the charge as made in the indictment and the proof heard at the trial as to the owner of the burned property. This precise question was brought before this court in the cases of Overstreet v. Commonwealth, 147 Ky. 471, 144 S. W. 751, and Commonwealth v. Napier, 84 S. W. 536, 27 Ky. Law Rep. 131, both of which involved offenses against unlawful burnings of property, and we held [147 Ky. 471, 144 S. W. 754] that a variance between the allegations of ownership contained in the indictment and the proof adduced "is not ordinarily material, and in this case there was no error in describing the ownership, as the property was in fact owned by Friedman," but it was leased to one R. L. Peacher. In the Napier case the indictment charged that Hiram J. Cawood was the owner of the burned property when the testimony showed that it was owned by his wife. Referring to Section 128 of the Criminal Code of Practice as modifying the rigorous technicalities of the common law the opinion said [84 S. W. 537, 27 Ky. Law Rep. 131]: "The grand jury knew, as well as did the defendant, what property was intended to be described in the indictment. Section 128, Criminal Code, was intended to modify the rigorous requirements of the common law as to the description of the person or property injured. When the act can be identified, there is no danger of a defendant being put in jeopardy twice for the same offense." Compare also the case of Scott v. Commonwealth, 70 S. W. 281, 24 Ky. Law Rep. 889, which was an indictment accusing the defendant of the crime of house-breaking with the intention of taking therefrom property of value. The indictment alleged the ownership of the property taken or

sought to be taken, but which the testimony showed belonged to a different person, and the court charged the jury in its instructions to find the defendant guilty if he intended to take or did take from the building broken into any property therein regardless of its ownership. Defendant was convicted and on appeal to this court that instruction was upheld on the ground that it was not essential to prove the ownership of the property as laid in the indictment, and that the variance with respect to the ownership was not a fatal one. Other cases, both domestic and foreign, have arrived at and approved the same interpretations, dependent, of course, upon qualifications that may have been enacted with reference to the particular offense on trial. It, therefore, follows that this alleged error is insufficient to authorize a reversal of the judgment.

Complaint (b), like the immediately preceding one, has also been answered in former opinions of this court, among which is Durham v. Commonwealth, 241 Ky. 612, 613, 44 S. W. (2d) 557 in which we sustained the objection to a similar instruction, notwithstanding the jury fixed the punishment of appellant within the terms of other given instructions, which was held by us to be fatal error for reasons set out in the opinion, and to which the reader is referred. The instruction complained of in this case told the jury that if it found defendant guilty a punishment of confinement in the penitentiary for not less than *two* years nor more than *twenty* years might be inflicted; whereas Section 1168 under which appellant was indicted prescribes the minimum punishment as confinement in the penitentiary for not less than *one* year nor more than *ten* years. Other cases are cited in briefs supporting the interpretation made in the Durham opinion which, if followed, sustains counsel's objection embodied in this contention. We see no reason for overruling our opinions holding such an error as fatal; from which it follows that the court committed a fatal error in so instructing the jury, and which sustains counsel's attack on the instruction complained of.

3. The only admitted evidence which brief of counsel relies on in support of error (3) is the testimony with reference to the trailing of the dogs claimed to be bloodhounds, when there was no proof heard as to their pedigree, or any qualifications concerning their fitness to

trail the course of human beings. It is the settled rule in this jurisdiction that such evidence must be adduced before the action of the animals may be accepted as substantive proof, and that to introduce their trailing and the subsequent facts developed therefrom without proof of their pedigree is erroneous, and for which reason a reversal of the judgment for conviction is authorized. The latest case from this court appears to be Eve v. Commonwealth, 278 Ky. 123, 128 S. W. (2d) 616. Some eight or ten prior ones to the same effect are listed in Key No. 386 under "Criminal Law" Volume 6 of West's Kentucky Digest, page 322. We have not found, nor has there been cited to us, any opinion by this court to the contrary. Therefore, this complaint supporting error (3) should be and it is sustained also.

The record discloses a somewhat vague intimation that the fire which destroyed the burned building was the result of an accident, not intended or contemplated by the one from whose hands the fire started, or the barn or any of its contents were ignited. But there was no witness who testified as to how the burned property became ignited, and the question was brought into the record by witnesses who testified as to statements made by Frost, out of court, but even they were of only a speculative nature. Therefore, the question as to appellant being entitled to such an instruction is not sufficiently manifested by the testimony heard at the trial as to authorize us to discuss or determine it, nor is it so contended by counsel for appellant in their brief filed in the case.

Wherefore, for the reasons hereinbefore stated the judgment is reversed, with directions to sustain the motion for a new trial, and to set aside the judgment of conviction, and for proceedings consistent with this opinion.